BUDDENBERG v. THE CHARLES P. CHOUTEAU TRANS-
PORTATION COMPANY, *Appellant.*

DIVISION ONE.

1. **Contributory Negligence:** INTOXICATION. Intoxication on the part of the deceased will not, in an action for death caused by defendant's negligence, establish as a matter of law the defense of contributory negligence, but it is a fact from which such defense may be inferred.

2. ———: ——— : INSTRUCTIONS. It is error in such case to instruct the jury that, though the deceased was under the influence of liquor, yet such intoxication is no defense, unless he was so intoxicated as to be unable to exercise ordinary care, and such error is not cured by a further instruction that there can be no recovery if the intoxication of deceased resulted in the want of reasonable care on his part which directly contributed to the accident.

3. **Conflicting Instructions:** REVERSIBLE ERROR. Where two instructions are conflicting, and it cannot be determined which one the jury followed, the judgment will be reversed.

4.   **Negligence** : STEAMBOAT COMPANY : IMPROPER LANDING : STATUTE. A suit for wrongful death by reason of the defendant, a steamboat company, having landed the deceased at an improper place so that he fell into the river is properly founded on Revised Statutes, 1879, section 2121, fixing the amount of recovery at $5,000.

5.   —— : —— : ——. Whether a judgment will be reversed because the court instructed on section 2122, Revised Statutes, 1879, and the jury found a verdict thereunder for $4,000, *quœre.*

6.   —— : —— : ——. A steamboat company is required to land its passengers at a safe place, and where it lands at a wharf owned by another it makes it its own landing and is liable accordingly.

*Appeal from St. Louis City Circuit Court.*—HON. D.D. FISHER, Judge.

REVERSED AND REMANDED.

*E. T. & C. B. Allen* for appellant.

(1) The measure of damages was the fixed sum of $5,000. It was error to instruct for a sum "not exceeding $5,000." R. S. 1889, sec. 4425 ; *Becke v. Railroad,* 102 Mo. 544 ; *Magoffin v. Railroad,* 102 Mo. 540 ; *Crumply v. Railroad,* 98 Mo. 34 ; *King v. Railroad,* 98 Mo. 235 ; *Sullivan v. Railroad,* 97 Mo. 113 ; *Wagner v. Railroad,* 97 Mo. 512 ; *Schlereth v. Railroad,* 96 Mo. 509 ; *Flynn v. Railroad,* 78 Mo. 201 ; *Holmes v. Railroad,* 69 Mo. 536 ; *Elliott v. Railroad,* 67 Mo. 272 ; *Proctor v. Railroad,* 64 Mo. 122 ; *Rafferty v. Railroad,* 15 Mo. App. 559 ; *Rindskoff v. Rodgers,* 34 Mo. App. 125 ; *Brewing Co. v. Bodeman,* 12 Mo. App. 573. (2) It was error to instruct the jury that Buddenberg's intoxication would be no defense to the action, unless they should believe from the evidence that he was so intoxicated as to be unable to exercise the care and prudence of a sober man. *Fitzgerald v. Weston,* 52 Wis. 537 ; *Strand v. Railroad,* 64 Mich. 216. (3) A carrier of passengers is not an insurer of their safety. Woods' Railway Law, sec. 296, p. 1034 ; *Sawyer v. Railroad,* 37 Mo. 241 ; *Carroll v. Railroad,* 58 N. Y. 138 ; *Galeno*

*v. Fay*, 16 Ill. 558 ; *Meier v. Railroad*, 64 Pa. St. 225 ; *Fairchild v. Stage Co.*, 13 Cal. 599 ; *Keith v. Pinkham*, 43 Me. 501 ; *Simmons v. Steamboat Co.*, 97 Mass. 361. ( 4 ) The facts in this case rebut any inference of negligence in landing at the wharfboat in question. *Loftus v. Ferry Co.*, 84 N. Y. 460 ; *Laflin v. Railroad*, 106 N. Y. 136 ; *Dougan v. Trans. Co.*, 56 N. Y. 1 ; *Cleveland v. Steamboat Co.*, 68 N. Y. 306 ; *Crocheron v. Ferry Co.*, 56 N. Y. 656. ( 5 ) The plaintiff must abide by the case made by her petition, and she cannot urge that the wharfboat was not lighted when the steamer landed, for that is inconsistent with, and repugnant to, her allegation that the wharf was partially lighted by the light on the steamer. *Knoop v. Kelsey*, 102 Mo. 291 ; *Ramsey v. Henderson*, 91 Mo. 560 ; *Lenox v. Harrison*, 88 Mo. 491 ; *Bank v. Armstrong*, 62 Mo. 59 ; *Foley v. Alkire*, 52 Mo. 317. ( 6 ) If Buddenberg could have seen there were no rails at the place from which he fell, if he had looked, but did not look, he was negligent. *Butts v. Railroad*, 98 Mo. 272 ; *Gleeson v. Mfg. Co.*, 94 Mo. 201 ; *Yancey v. Railroad*, 93 Mo. 433 ; *Taylor v. Railroad*, 86 Mo. 458 ; *Lenix v. Railroad*, 76 Mo. 86 ; *Powell v. Railroad*, 76 Mo. 80 ; *Zimmermann v. Railroad*, 71 Mo. 476 ; *Hallihan v. Railroad*, 71 Mo. 113.

*P. H. Bierman, Thos. Thoroughman* and *J. K. Hansbrough* for respondent.

( 1 ) This suit was brought and tried, as falling under what is generally known as the third section of the damage act, being section 4426 of Revised Statutes, 1889. If an injury, and not death, had ensued, Buddenberg could have maintained an action against defendant for the wron s complained of in the petition. *Elliott v. Railroad*, 67 Mo. 272. But even if properly falling under the second section of the damage act, it is now too late to so insist for the first time in this court,

defendant having tried the case on the theory that it came under the third section. *Bank v. Armstrong*, 62 Mo. 59 ; *Tetherow v. Railroad*, 98 Mo. 74 ; *Davis v. Brown*, 67 Mo. 313 ; *McGonigle v. Daugherty*, 71 Mo. 259 ; *Smith v. Culligan*, 74 Mo. 388 ; *Holmes v. Braidwood*, 82 Mo. 610 ; *Bank v. Hatch*, 98 Mo. 376. Furthermore, if this cause of action falls under the second section, yet, as the verdict is not in excess of the amount allowed by that section, the verdict is not void ; and the defendant is not injured, and cannot complain. *In re Graham*, 74 Wis. 450. ( 2 ) There was no error in giving the instruction for plaintiff, bearing on Buddenberg's intoxication. ( 3 ) A carrier of passengers is bound to use all the care, caution and prudence that human skill and foresight can bring to his aid ; must use the highest degree of foresight, knowledge, skill and care ; and is liable for the least degree of negligence. *Lemon v. Chanslor*, 68 Mo. 340 ; *Leslie v. Railroad*, 88 Mo. 55 ; Hutchison on Carriers, secs. 500–504. ( 4 ) If plaintiff's instructions were, in any manner, defective or obscure, such defects and obscurities were abundantly supplied in defendant's instructions ; and when the instructions, taken together. present the issues fairly, there can be no just claim of injury, and the verdict will not be disturbed. *Owens v. Railroad*, 95 Mo. 170 ; *Reilly v. Railroad*, 94 Mo. 600 ; *Henschen v. O'Bannon*, 56 Mo. 289 ; *Marshall v. Ins. Co.*, 43 Mo. 586 ; *Vinegar Co. v. Guggemos*, 98 Mo. 391 ; *Barry v. Railroad*, 98 Mo. 62 ; *La Riviere v. La Riviere*, 97 Mo. 80 ; *Bank v. Hatch*, 98 Mo. 376. ( 5 ) Defendant's fifth point, to-wit : " If it was too dark for Buddenberg to see where he was going, he was negligent in walking to the place he fell in ; and, if he could have seen there were no rails there, had he looked, but did not look, he was negligent," is so entirely original, and so thoroughly overwhelming in its logical results, that we confess ourselves unable to fittingly answer it.

BLACK, J.—The plaintiff brought this suit to recover damages for the death of her husband, caused, it is alleged, by the negligence of the defendant.

A society of some eight hundred or a thousand persons chartered the defendant's steamer for an excursion on the fourth of July, 1887. They sold to William Buddenberg, the deceased, the right to maintain a bar and restaurant on the boat and pleasure grounds. The boat returned to St. Louis that night between ten and eleven o'clock, and landed at what is called the Diamond Joe wharfboat, which was a different place from which the boat departed in the morning.

The wharfboat was a long, covered structure, boarded down to within seven feet of the floor. There were two openings on the river side, one fourteen feet wide and the other ten or twelve feet wide, separated only by a post. The small one was down the river from the other, and was constructed so as to be closed with guardrails; but the rails or bars were down when the steamer landed and discharged her passengers. There were guards on either side of these openings to protect persons and property. The gang plank was extended from the steamboat to the large opening of the wharfboat.

The evidence for the plaintiff tended to show that the electric lights of the steamer were turned off immediately after the passengers had landed; that there were then no lights on the steamer or wharfboat, save a small lantern which was too far away to be of any assistance; that, at the time the electric lights were turned off, Buddenberg's barkeepers and waiters had removed most, but not all, of his goods and bar furniture to the wharfboat; that Buddenberg was on the wharfboat giving directions as to loading his property on a wagon. The evidence of one witness for the plaintiff, taken by itself, rather tends to show that Buddenberg started back to the steamer, and in doing

so missed the gang plank and fell off at the opening designed to be closed by guardrails. The great mass of the evidence, however, is to the effect that he did not start back to the steamer, but was standing or moving about close to the opening and fell over and was drowned.

The evidence for the defendant tends to show that the electric lights were not turned off until Buddenberg had all of his effects on the wharfboat; that there were three lamps on the steamer, one on each side of the gang plank, and one on the capstan, and that there were two lights on the wharfboat, one at each end. There was a fair moonlight, but another steamer at the wharf obstructed that light at this landing.

It is conceded on all hands that Buddenberg had been drinking, but a number of persons say he had full possession of his faculties. On the other hand a number of witnesses testified that he was drunk to a staggering condition. Two persons who were standing at the foot of the gang plank say he stepped around or over some goods lying on the wharfboat and up to the post between the two openings; that he stood there for a moment or two and fell over. One of them says he made a noise as if sick at the stomach. These two witnesses must have been within ten or fifteen feet of him when he fell.

As the plaintiff's instruction on the subject of intoxication is made the ground of much complaint, we set it and one given at the request of the defendant out in full.

For the plaintiff: "Although the jury may believe, from the evidence, that Buddenberg had, during the day, been drinking beer and whiskey, and that he was, to some extent, under its influence, unless they further believe, from the evidence, that he was so intoxicated as to be unable to exercise, and did not exercise, the care and prudence at the time he fell into the river that prudent and sober men situated in like circumstances

as he was would ordinarily exercise, and that such want of care on his part directly contributed to his falling into the river and drowning, then such intoxication, if there was any, is no defense to this action, and does not preclude a recovery by plaintiff on that ground."

For the defendant: "If the jury believe, from the evidence, that William Buddenberg, at and shortly before the time when he fell into the river from the Diamond Joe wharfboat, was more or less intoxicated, and that by reason of such intoxication he did not exercise the care and prudence ordinarily exercised by prudent and sober men in such a place, and under such circumstances as he then was, and that such intoxication resulted in want of reasonable care on his part which directly contributed to his falling into the river and being drowned, they will find for the defendant."

1. Intoxication on the part of the deceased will not, as a matter of law, establish the charge of contributory negligence set up in the answer ; but it is a fact from which contributory negligence may be inferred. The weight of such evidence depends much upon the degree of intoxication, but drunkenness to any degree is a fact which should be considered on the question of contributory negligence. 1 Shear. & Red. on Neg. [4 Ed.] sec. 93; Beach on Cont. Neg. [1 Ed.] sec. 66; *Fitzgerald, Adm'x, v. Town of Weston*, 52 Wis. 355. Of course intoxication amounts to nothing unless it contributes to the injury or death complained of.

Omitting the last-mentioned element, the plaintiff's instruction is, in substance and effect, this: Though the deceased was under the influence of whiskey and beer, yet such intoxication is no defense to this action, and does not preclude a recovery, unless he was so intoxicated as to be unable to exercise ordinary care. The tenor and effect of this instruction is to lay the evidence of inebriation on the part of the deceased out of the case, unless it should go far enough to satisfy the minds of the jurors that he was so drunk as to be unable

to exercise ordinary care. This is clearly not the law; for the fact of intoxication, no matter to what extent, was a fact to be considered by the jury.

The question then is whether this error is cured by the instruction given at the request of the defendant. An instruction given at the request of the plaintiff to the effect, that the fact of intoxication is not conclusive evidence of contributory negligence, would stand in harmony with one given at the request of the defendant to the effect that intoxication to any extent is a fact to be considered with the other evidence and from which contributory negligence may be inferred. But we cannot say that the two instructions in question mean this; for the plaintiff's instruction makes drunkenness on the part of the deceased count for nothing, unless it reached such a degree as to render him incapable of exercising ordinary care. The instructions are, therefore, conflicting, for they embrace within the facts stated inconsistent propositions of law. As it cannot be told which instruction the jury followed, the judgment must be reversed for this error.

The question of contributory negligence on the part of the deceased is a vital one in this case, and the instructions on that subject should be clear and free from any legal objection.

2. The court instructed as to the measure of damages on the theory that the cause of action is based on section 2122, Revised Statutes, 1879, and under the instruction the jury returned a verdict for $4,000. The defendant, having excepted to this instruction, now insists that the cause of action comes under section 2121, so that the damages are fixed at $5,000. The first clause of the last-named section gives a cause of action where any person shall die from an injury "resulting from or occasioned by the negligence * * * of any master, pilot, engineer, agent or employe, whilst running, conducting or managing any steamboat, or any of

the machinery thereof." The petition is based upon the theory that defendant negligently landed the deceased at an unsafe place, and negligently turned off the lights of the steamer and thus left the wharfboat in darkness before he had time to get away with his effects. It was certainly the duty of the defendant to furnish the passengers a safe landing place and to furnish lights to enable them to get off with their property, the passengers using ordinary care. These were some of the duties devolved upon the defendant and its servants in "conducting and managing" the steamboat. The cause of action, we conclude, comes under section 2121. As to whether the defendant could demand a reversal for this error, we express no opinion, but have made these observations in view of another trial.

3. It seems some wharfboats have guards, and others do not. This boat did have them, and that of itself would tend to cause persons to rely upon them, and whether it was negligence on the part of defendant in failing to see that the rails were up at the place where the deceased fell off is a proper question for the jury.

What relation existed between the defendant and the owner of the wharfboat does not appear, nor do we think it material. The defendant elected to land its passengers at this wharf. The deceased had no choice in selecting the place of landing, and his contract required the defendant to furnish a safe landing place. The defendant by landing its passengers at this place made the wharfboat a part of its own means of landing, and is liable to its own passengers the same as if it had owned the wharfboat. Such is the rule in regard to railroad stations, and we see no reason why it should not apply to steamboat landings. Hutchison on Carriers, sec. 514.

There is also evidence tending to show negligence in not keeping up the lights long enough to enable the deceased to get his goods and bar furniture landed and

loaded on his wagon. There was much conflict in the evidence on the foregoing issues of fact, but it is not our province to find the facts. That duty belongs to the jury. The judgment is reversed and the cause remanded. All concur.