[No. 15921. Department One. November 22, 1920.]

## J. F. MYLES, *Respondent*, v. NORTHERN ASSURANCE COMPANY, *Appellant*.[1]

INSURANCE (77) — FIRE INSURANCE — AVOIDANCE OF POLICY FOR FRAUD—REPRESENTATIONS AS TO VALUE. In an action upon a fire insurance policy, the defense that the policy was induced by false representations as to the value of the property, is not sustained by evidence that the insured stated to the agent that the house was "worth about $2,000," where it appears that the agent visited the premises and made his own inspection; in view of Rem. Code, § 6059-105, making it a presumption of fact that the agent knew the value of the house.

SAME (77). Rem. Code, § 6059-105½, providing that, where property is wholly destroyed without criminal fault on the part of the insured, the amount of the insurance written shall be taken conclusively as the true value of the property, does not preclude the defense of fraud and misrepresentation by the insured as to the value, inducing the issuance of a policy in an excessive amount.

SAME (91)—BREACH OF CONDITION—CHANGE OF OWNERSHIP. Under Rem. Code, § 6059-34, providing that breach of warranty or condition shall not avoid the policy unless the breach exists at the time of the loss, the insured's temporary transfer of his title to a third person will not avoid the policy under the clause forbidding change of interest or title, where at the time of the loss, the property had been conveyed back to the insured, who was then vested with title.

SAME (95, 188)—FORFEITURE OF POLICY—BREACH OF CONDITION— ADDITIONAL INSURANCE—QUESTION FOR JURY. In an action upon a fire insurance policy, whether additional insurance on the property was concealed from the agent, or whether the agent was led to believe that additional insurance had been cancelled, are questions for the jury, where the agent testified to that effect and the insured denied such fact and testified that the agent stated that additional insurance would not affect the policy.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered October 22, 1919, upon the verdict of a jury rendered in favor of

[1]Reported in 193 Pac. 703.

the plaintiff by direction of the court, in an action on a fire insurance policy.  Reversed.

*H. T. Granger* and *S. H. Steele,* for appellant.
*A. E. Cross* and *John C. Hogan,* for respondent.

PARKER, J.—The plaintiff, Myles, commenced this action in the superior court for Grays Harbor county, seeking recovery upon a fire insurance policy issued by the defendant company insuring a dwelling house owned by him near the town of Elma in that county. The issuance of the policy for $1,500 on October 4, 1916, and the total destruction of the house by fire on May 8, 1917, before the term of insurance specified in the policy had expired, is admitted.  The company set up three affirmative defenses by which it seeks to avoid liability.  The case came on for trial before the court sitting with a jury, there being no issues of law or fact other than as to the company's right to be absolved from liability because of the facts set up in one or more of its affirmative defenses.  At the conclusion of the trial, the court directed the rendering of a verdict in favor of Myles, awarding him the full amount of the policy, upon motion of his counsel made in that behalf.  The motion was made and granted upon the theory that there was no evidence sufficient in law to sustain either of the company's affirmative defenses. Judgment was rendered accordingly, from which the company has appealed to this court.  In view of our conclusion that the company is entitled to a new trial because of error of the trial court in withdrawing the third affirmative defense from the consideration of the jury, it becomes necessary for us to also notice the other defenses because of what may occur upon the new trial relative thereto.  We therefore notice the affirmative defenses in order.

The company's first affirmative defense is, in substance, that Myles knowingly falsely represented to its agent that the house was worth $2,000, in order to induce the issuing of the policy for $1,500, when in fact the house was worth not to exceed $1,000, and that the agent relied upon such representation and was induced thereby to issue the policy in the excessive sum of $1,500, and would not otherwise have done so. The agent then resided and maintained his office and agency at Aberdeen. The house, being near Elma, is some twenty miles distant from Aberdeen. The agent, desiring to see the house before issuing the policy, visited the premises, making the journey there from Aberdeen for that express purpose. He and Myles visited the premises together, the latter furnishing his automobile as their conveyance. The agent testified that he looked the house over on the outside but did not go inside, and that Myles told him it "was worth about $2,000." Just when Myles told him this he does not say. There is nothing in the agent's testimony, and there is no other, as to what Myles said about the value of the house, or indicating in the least that the agent was otherwise prevented or induced to refrain from examining the inside of the house. Myles positively denies by his testimony that he made such representation to the agent as to the value of the house, and also testified that the agent went inside the house and examined it. For present purposes, though, we ignore this testimony of Myles. In view of the fact that the claimed making of such false representations and the agent being induced thereby to issue the policy in the alleged excessive amount of $1,500 is a pure affirmative defense, the burden of proving which is upon the company, and in view of the provisions of the insurance code found in § 6059-105, Rem. Code,

expressly making it a presumption of fact that the agent knew the value of the house, we think the trial court did not err in deciding, as a matter of law, that the mere expression of Myles to the agent that the house was ''worth about $2,000,'' assuming he made such expression, under admitted circumstances, was erroneous.

Contention is made in behalf of Myles that, in any event, the company cannot be heard to say, even upon the issue of fraud inducing the issuing of the policy, that the house was not worth more than $1,500, and that Myles made false representation as to its value. This contention is rested upon the provisions of § 6059-105½, Rem. Code, reading as follows:

''Whenever any policy of insurance shall be hereafter written or renewed insuring real property or any building or structure erected thereon or connected therewith, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured, or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of the loss and measure of damages when destroyed.''

We are of the opinion that this means only that the damages suffered by the insured, upon a total loss of the insured structure, shall be measured by the amount specified in the policy, when there is a valid enforcible insurance contract; and that it does not prevent the company from setting up fraud and misrepresentation by the insured as to the value of the structure, inducing the issuing of a policy in an excessive amount, for the purpose of avoiding the insurance contract. Of course, to successfully avoid a policy because of fraud so grounded would require a very clear case of misrepresentation and inducement.

The company's second affirmative defense is, in substance, that the policy was forfeited and rendered void because of change of ownership in the property during the stated insurance term. It is undisputed that, on March 10, 1917, Myles conveyed the property by deed to a lady with whom he contemplated marriage. This he claims was done merely to the end that she might be able promptly to make a trade of the property for certain property which they contemplated acquiring situated in another county. This purpose, however, we regard as of little or no importance here. In any event, ten days later, on March 19, 1917, she conveyed the property back to Myles, again vesting complete title thereto in him. This contention is rested upon a provision of the policy reading as follows:

"This entire policy, unless otherwise provided by express agreement endorsed hereon or added hereto, shall be void . . . if any change other than by death of the insured takes place in the interest, title or possession of the subject of insurance."

Had the fire occurred while the title to the property was thus vested in Myles' grantee, it may be conceded that his rights under the policy would now be deemed forfeited. But that was a condition of the policy the breach of which did not exist at the time of the fire, when Myles' title to the property was as complete and perfect as at the time of the issuance of the policy. In a provision of the insurance code found in § 6059-34, Rem. Code, we read:

"If any breach of a warranty or condition in any contract or policy of insurance shall occur prior to a loss under such policy, such breach shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of such loss under such contract or policy."

This, it seems to us, is a complete answer to the contention that the rights of Myles under the policy are now forfeited because of that temporary change of ownership in the property. We conclude that the trial court did not err in holding that the rights of Myles under the policy were not forfeited by that temporary transfer of the property.

The company's third affirmative defense is in substance that Myles and his mortgagee had other insurance upon the house in the sum of $600 at the time of the issuance of this policy and at the time of the fire, in violation of provisions of this policy reading as follows:

"No other concurrent insurance permitted." . . .

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

It is conceded by Myles that there was, at the time of the issuance of this policy, and at the time of the fire, a policy of insurance held by Myles and the mortgagee in the sum of $600, which has since been paid to his mortgagee. Myles seeks to avoid the effect of the $600 policy upon this policy by showing that the agent was informed of its existence at the time of the issuing of this policy. The agent testified:

"Mr. Myles voluntarily told me that there was an agent up in Elma that had an insurance policy on the house, but he, Mr. Myles, told me that he was going to cancel that policy as he desired to have all of his insurance in one company.

"I told Mr. Myles that if he was going to cancel that policy I could insure the place for $1,500, but if he was going to keep that policy I could only give him $900 or $1,000, as the value of the house would not merit

more. He told me, as above stated, that he was going to cancel that policy.

"Relying upon the statements made by him as to the value of the place, and the added improvements— I told him that we would be able to insure the house for $1,500, but the place would carry no more.

"It was agreed that after Mr. Myles had cancelled his policy in this other company for $600 that we could insure the place for $1,500, and I so wrote the insurance, he promising to cancel this other policy forthwith."

All of this testimony relating to the cancellation of the $600 policy is denied by the testimony of Myles, who also says that he did not know that this policy contained provisions prohibiting additional insurance, and also that the agent gave him to understand that the additional insurance would not affect this policy. This policy was not delivered by the agent to Myles until a day or two after this occurrence. It seems to us that, under this condition of the testimony, it became a question of fact for the jury to determine whether or not the existence of the additional $600 insurance was wilfully concealed from the agent by Myles at the time this policy was issued to him, and as to whether or not the agent was lead by the promise of Myles and his later silence to issue this policy in the belief that the $600 policy had been cancelled. We conclude that the trial court erred in taking from the jury the consideration of the third affirmative defense and in deciding, as a matter of law, that there was no evidence warranting the submission of that defense to the jury. For this error the judgment is reversed and the defendant awarded a new trial.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.