OSTERHOLM, ADMR., APPELLANT, *v.* BUTTE ELECTRIC
RY. CO. ET AL., RESPONDENTS.

(No. 4,383.)

(Submitted April 22, 1921.   Decided May 23, 1921.)

[199 Pac. 252.]

*Personal Injury—Death—Street-cars—Negligence—Evidence—*
*Insufficiency—Intoxication—Presumptions—Burden of Proof*
*—Appeal and Error—Inadequacy of Damages.*

Personal Injuries—Death by Negligence—Earning Capacity—Immaterial
Evidence.
1.   Where the complaint in an action to recover damages for the
death of a miner from a street railway company alleged that decedent
had been earning, and was capable of earning, $4 per day, evidence
as to wages paid miners at the time of the trial was immaterial and
properly excluded.

Same—Intoxication—Evidence—Admissibility.
2.   Proof of decedent's intoxication at the time he was struck by a
street-car while attempting to cross the street at a place where there
was no crossing was admissible.

Same—Negligence—Presumption of Due Care—Improper Instruction.
3.   An instruction that the law presumes that plaintiff's decedent at
the time of the accident was exercising ordinary care for his safety
was properly refused where the question of negligence on the part of
defendant and that of contributory negligence on his part were issues
of fact to be determined by the jury.

Same—Negligence—Burden of Proof.
4.   Since every person is bound to exercise his intelligence to dis-
cover and avoid danger, the burden of proving that his intestate did
so at the time he was injured was upon plaintiff, the burden not
being upon defendant to show that it was not guilty of negligence.

Same—Appeal and Error—Increasing Award of Jury—Supreme Court—
Jurisdiction.
5.   *Quaere:* While the supreme court may reverse a judgment and
order a new trial where the damages awarded are clearly inadequate
under the evidence, may it, of its own motion, award adequate dam-
ages in such a case, without ordering a new trial?

Same—Evidence — Insufficiency—Inadequacy of Damages—When   New
Trial Improper.
6.   Where the evidence of plaintiff in an action for damages for death
by negligence was wholly insufficient to warrant a judgment in his

---

2.   On intoxication as evidence of negligence, see notes in 25 **Am. St.**
**Rep.** 39; 5 **Ann. Cas.** 72; 19 **Ann. Cas.** 1176; **Ann. Cas.** 1914D, 114;
40 **L. R. A.** 143; 47 **L. R. A. (n. s.)** 733, 740; 50 **L. R. A. (n. s.)** 568.

favor and the court committed error in not granting defendant's motion for a directed verdict, a judgment in his favor for $51 and costs will not be reversed on the ground of inadequacy of damages or a new trial ordered.

*Appeals from District Court, Silver Bow County; Edwin M. Lamb, Judge.*

ACTION by Victor Osterholm, as administrator of the estate of Edus B. Lund, against the Butte Electric Railway Company and others. From a judgment for plaintiff for an alleged insufficient amount, and from an order denying a motion for new trial, plaintiff appeals. Affirmed.

*Mr. H. A. Tyvand* and *Mr. J. O. Davies,* for Appellant, submitted a brief; *Mr. Davies* argued the cause orally.

The evidence of intoxication of the injured party, Lund, was wholly immaterial, not within the issues, and only tended to prejudice the minds of the jurors, and the ruling of the trial court in permitting this evidence was clearly erroneous. (*Herzig* v. *Sandberg,* 54 Mont. 538, 172 Pac. 132.)

The trial court committed error in rejecting plaintiff's offered instruction No. 11. In this instruction the plaintiff requested the court to charge the jury that the law presumed. Lund was in the exercise of ordinary care for his own safety at the time of the injury. This instruction correctly states the law. A similar instruction to this one has been frequently given by the trial courts, and instructions stating a similar proposition of law on behalf of defendant has also been frequently given, and have on every occasion been approved by this court or at least never held to be erroneous. This instruction not only states the common law, as announced by this court, but is also embodied in our statutes. (*Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; Rev. Codes, sec. 7962, subd. 4.)

The verdict for $51 in this case was and is just as clearly against and contrary to the law as given to them by the court, as if it had instructed the jury to return a verdict in favor

of the plaintiff and the jury had returned a verdict in favor of the defendants. A verdict of the jury contrary to instructions of the court must be set aside. (*Allen* v. *Bear Creek Coal Co.*, 43 Mont. 269, 115 Pac. 673; *McAllister* v. *Rocky Fork Coal Co.*, 31 Mont. 359, 78 Pac. 595; *Murray* v. *Heinze*, 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714.)

The verdict was grossly inadequate. This court has had this same question before it on a previous occasion in case of *Flaherty* v. *Butte Electric Ry. Co.*, 42 Mont. 89, 111 Pac. 348, and has held that the courts of Montana have the power to grant the relief demanded by such a situation. If the trial court did not abuse its discretion in granting a new trial in the *Flaherty Case*, then it certainly follows as a matter of course that the trial court was bound under the law to grant relief in this case, and its refusal to do so was error. In the *Flaherty Case* the verdict was for $100. The action was for loss of earnings to a father of his minor child until he reached twenty-one years of age. There was no evidence whatever introduced whereby a jury could measure or determine the father's damages; the measure of damages being left solely to the discretion of the jury.

Under situations like this there can be no question but that the court has the power to fix the damages, even without any statute, under the general powers given to the court by our Constitution, but our legislature has directly given to this court such power in section 6253 of the Revised Codes in the following language: "The supreme court may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had."

This language is plain and unambiguous, and under it there can be no question but that this court has the power to enter any judgment which it deems proper in any case brought to it on appeal, either from a judgment or order denying a new trial.

In the case of *McDermott* v. *American Bonding Co.,* 56 Mont. 1, 179 Pac. 828, this court exercised the power given to it by the Constitution and this section of our Code to increase the amount of damages awarded the plaintiff. No distinction can be drawn between that case and the present one. The amount of damages which the plaintiff is entitled to in this case is certainly just as definite, fixed and ascertainable under the evidence as was the damages in that case. Among the cases supporting the view that the supreme court may increase the amount of judgment of the lower court are the following: *Gans* v. *Woolfolk,* 2 Mont. 458; *Bielenberg* v. *Eyre,* 44 Mont. 397, 120 Pac. 243; *Atherton* v. *Fowler,* 46 Cal. 320; *Spence* v. *Damrow,* 32 Neb. 112, 48 N. W. 880; *Tolchinsky* v. *Schiff,* 47 Misc. Rep. 371, 93 N. Y. Supp. 1073; *Warner* v. *Talbot,* 112 La. 817, 104 Am. St. Rep. 460, 66 L. R. A. 336, 36 South. 743; *Englert* v. *New Orleans R. & L. Co.,* 128 La. 473, 54 South. 963.

*Messrs.* *Templeman & Sanner, Mr. Peter Breen, Mr. W. L. Murphy* and *Mr. Fred J. Furman,* for Respondents, submitted a brief; *Mr. Furman* argued the cause orally.

Counsel for appellant cite cases in which jury verdicts were set aside and new trials ordered because they were inadequate. An examination of these citations shows most striking dissimilarity with the cause at issue. Lund is a single man, without dependents, apparently. The jury may well have taken the view that no one was financially interested in the estate except the administrator and his attorneys. That this was unquestionably their view is indicated by the fact that while the jury were deliberating upon their verdict in this cause they requested to be returned into the courtroom and further instructed by the court. When they were so returned they asked the judge to instruct them concerning the smallest verdict which would carry costs, and they were instructed by the court, in the absence of counsel, that a verdict of more than $50 carried costs,—a circumstance which shows clearly that the jury

desired to enable the administrator to judicially determine
liability for the death of Lund without attaching personal re-
sponsibility to himself for the costs.   The trial court could
readily take the view that the verdict was adequate.   Other
courts have so held.   The supreme court of Tennessee, in the
case of *Haley* v. *Mobile & O. R. Co.*, 7 Baxt. 239, hold that
five dollars is adequate.   One dollar is adequate: *Smith* v.
*Chicago, M. & St. P. Ry. Co.*, 6 S. D. 583, 28 L. R. A. 573,
62 N. W. 967.   One cent is adequate: *Jenkins* v. *Hankins*, 98
Tenn. 545, 41 S. W. 1028.   Funeral expenses: *Deluna* v.
*Union Pac. Ry. Co.*, 130 App. Div. 386, 114 N. Y. Supp. 893.
one hundred and seventy-five dollars is adequate in; *Leahy* v.
*Davis*, 121 Mo. 227, 25 S. W. 941.   Six cents: *Silberstein* v.
*Wm. Wicke Co.* (Super. Ct.), 22 N. Y. Supp. 170.   The cases
cited by counsel are all readily distinguishable from the one
at trial.   There is no widow here; no orhpan; no dependent
mother; nobody, apparently, to benefit but the administrator
and his counsel.

MR. CHIEF COMMISSIONER POORMAN prepared the
opinion for the court.

This is an appeal by plaintiff from a judgment entered on a
verdict in his favor for the sum of $51 and costs, and from
an order overruling the plaintiff's motion for a new trial.

The defendant corporation, on the fifteenth day of July,
1915, and for several years prior to that time, operated a
street railway along and over Florence Avenue, in Butte,
Montana; the track extending practically north and south.
At 11:30 o'clock P. M. on the fifteenth day of July, 1915, and
at a point on said Florence Avenue at or near its intersection
with B Street, the plaintiff's intestate, Edus B. Lund, was
struck by an electric car operated by employees of the de-
fendant company, and was so badly injured that he died on
the following day.   Plaintiff alleges that the deceased came to
his death by reason of the negligence of defendant's employees
in the operation of said car, and for defects in the car.   The
grounds of negligence charged in the complaint are (a) danger-

ous rate of speed; (b) car not under control; (c) insufficient headlight; (d) failure to keep proper lookout; (e) failure to ring bell or give warning of the approach of the car. The plaintiff further alleges that the deceased, at the time of his death, was strong, able-bodied, a miner by occupation, twenty-one years of age, life expectancy forty-two years, earning and capable of earning $4 per day. Damages were asked in the sum of $60,000.

The answer of the defendants contains admissions and denials, but it is sufficient here to say that the negligence charged against the defendants is denied, and that defendants charge the deceased with contributory negligence in the following particulars: That he left the open and used portion of Florence Avenue, and attempted to cross the car-track at a place where Florence Avenue was unopen, uneven, rough and unguarded, and where there was no crossing, and at a place other than a regular crossing, and at a time when a car was approaching; and that whatever injuries were suffered by the deceased were caused as a result of his own contributory negligence.

Leonard Gustafson, a witness called by the plaintiff, testified that on the day of the accident the deceased hired a horse and buggy, and that the witness and deceased went to a funeral. In detailing the travel and course during the day he states: That they first went to the undertaker's place, then to the cemetery, then to the Five Mile House, then to the Nine Mile House, then to the Ten Mile House, then to the Mountain View Hotel, and that they left the latter place a few minutes before 11 o'clock at night; that at that time the witness was driving. It was pretty dark, and he could not see the road very well. "When we came to Florence Avenue, we came into a little ditch with the front wheel. We had to step out of the buggy, both of us. I got out of the buggy first. * * * When I got out of the buggy, I was looking around, and I seen the street-car track right there, so I tried to get the horse and buggy over. When I looked around, I was right on the side of the buggy. Lund, he was right close to me. I

looked north and south, both directions. I looked around.
I didn't see any street-car. Then I tried to drive the horse
over. I drove it over. When I got across with the horse, I
was looking after my partner, and at the same time I seen
the street-car coming. It was about ten feet or fifteen off
from Ed [deceased]. He was following me and in a northwest
direction. He was in the middle of the car-track. The street-
car knocked him down and  *  *  *  dragged him about
thirty feet." Witness further stated: That he drove about
ten, fifteen, or twenty feet across the track and stopped; that
he neither saw nor heard the car until just before it struck
Lund; that he did not hear a bell; that he crossed the tracks
at an angle in a northwest direction: that the street-car track
at that place was straight for at least two blocks, then there
was a curve; that he and Lund had been drinking some during
the day, but that neither of them was drunk at the time of
the accident; that he walked and drove the horse across the
track; that at the time he saw Lund on the track there was a
little light on the car, "so I could see Ed was following me,
and at the same time the street-car knocked him down  *  *  *
he was standing and following me;  *  *  *  it was a little
light on the car. I could see a little ahead at the time. It
was an open car."

Angus McLeod, called as a witness by plaintiff, testified that
he was riding on the car at the time Lund was struck; that the
car was traveling at a moderate rate of speed, from twelve to
fifteen miles per hour; the motorman was at his proper sta-
tion; the lights were burning brightly in the car at all times;
that it was an open car, nothing unusual about the machinery;
that it was a straight track; that he noticed the headlight
"burning bright" at the last curve; and that he did not
notice the headlight after that time, but all other lights were
burning brightly when the car stopped. The stop was made
from fifteen to twenty-five feet after the brakes were applied;
that it was a "sudden stop—a very quick stop."

Victor Osterholm, the plaintiff, was called, and testified that he was on the ground the following day; that the buggy crossed the car-tracks "kind of south side of B Street, going northwest"; that both B Street and Florence Avenue were open and traveled streets; that "the street-car track is straight for about eighteen rails, track rails. A rail is about thirty feet long." Witness further testified to finding a little spot of blood about thirty feet north of where the buggy crossed the track, but he saw no sign of the body having been dragged.

Joseph Armstrong, called by plaintiff, testified that both Florence Avenue and B Street were open streets at the time of the accident and that grading was going on there. Plaintiff's witnesses also testified that at the place where the buggy crossed the street-car track there were no planks between the rails; that the dirt was filled up to the top of the ties.

At the close of plaintiff's evidence, defendants moved for nonsuit, which was sustained as to defendant Wharton, and overruled as to the other defendants.

Witnesses for the defendants testified that they followed the tracks of the buggy, which was driven by Gustafson and deceased; that they crossed the street-car track in the vicinity of C Street, extending then in an easterly direction; that they turned in a northerly direction, parallel to the street-car track, which they followed for some little distance, between Florence Avenue and Massachusetts Street, where there was no road at all, and extending to a point about fifty or sixty feet from what is known as B Street. There the tracks turned abruptly toward the west and went down a bank, due to an excavation on Florence Avenue, in an angling direction toward the northwest, across the street-car tracks; that the streets at that point were plowed, and they were doing grading there; that there was an embankment of a foot or eighteen inches where the buggy went across; that the country there "looked like No Man's Land. It was kind of a lot of holes, like a plowed field, you know; very rough."

[60 Mont. 193.]

The motorman testified that he saw something on the track about seventy feet distant, which he thought was loose dirt; that he did not detect that it was a human body until he got close to it, within twenty or thirty feet; he then found it was a man lying down between the rails, with his head on a little bank of dirt. The motorman further testified that the headlight was burning at all times and that he could distinguish an object at a distance of 200 feet.

Defendants' Exhibits 1 and 2, being photographs of the place of the accident, clearly support the statements made by defendants' witnesses as to the character of the ground and of the crossing where the accident occurred.

The evidence of the defendants is further to the effect that there was not any defect in the headlight; that all the lights on the car, including the headlight, burn in series with four lamps in the car and one in the headlight; that, whenever the four lamps in the car are lit, the headlight is burning; that the street-car, at the time of the accident, stopped about opposite the buggy; and that Lund's body had been dragged about five feet. Witnesses for the defendants also testified that the deceased was drunk at 8 o'clock that night, and that both Lund and Gustafson, the driver, were drunk at the time of the accident. This fact was controverted by the plaintiff's witnesses. At the close of the testimony, the defendants asked for a directed verdict in their favor, which was overruled.

The specification of errors of plaintiff contains eight assign- [1] ments; the first one being general, and the second and third to the effect that the court refused to admit evidence as to miners' wages at the time of the trial. This, we take it, was immaterial, as the plaintiff by his pleadings, had limited himself in this regard.

Assignments 4, 5, 6 and 7 take issue with the court in ad- [2] mitting evidence upon the question as to whether the deceased was drunk at the time of the accident. These questions have been decided adversely to the contention of the appellant by this court in *Herzig* v. *Sandberg,* 54 Mont. 538,

172 Pac. 132, and in addition to that case we may cite here the following: *Buddenberg* v. *Charles P. Chouteau Trans. Co.*, 108 Mo. 394, 18 S. W. 970; *Rhyner* v. *City of Menasha*, 107 Wis. 201, 83 N. W. 303; *Ford* v. *Umatilla Co.*, 15 Or. 313, 16 Pac. 33; *McIntosh* v. *Standard Oil Co.*, 89 Kan. 289, Ann. Cas. 1914D, 112, 47 L. R. A. (n. s.) 730, 131 Pac. 151.

By assignment 8 the appellant takes issue with the court in [3] refusing to give its proposed instruction No. 11, which is: "You are instructed that the law presumes that the plaintiff's decedent, Edus B. Lund, was at the time of the injury to him, exercising ordinary care for his safety." Appellant contends that subdivision 4 of section 7962, Revised Codes, is authority for such an instruction. This statute is as follows: "That a person takes ordinary care of his own concerns." This statute, however, applies to a defendant as well as to a plaintiff, and one of the questions at issue here is whether the proper kind of care was used. The plaintiff charges negligence on the part of the defendants; the defendants charge negligence on the part of the plaintiff. The court has no more right to presume that the deceased used ordinary care than it has to presume that the defendants used ordinary care. This is one of the questions of fact at issue.

At the trial the plaintiff seemed to proceed upon the theory [4] that, having shown that the deceased met his death by being struck with the car, the burden was then upon the defendants to show that they were not guilty of negligence. However, this court has decided: "Every person is bound to an absolute duty to exercise his intelligence to discover and avoid dangers that may threaten him. When, therefore, a plaintiff asserts the right of recovery on the ground of culpable negligence of the defendant, he is bound to show that he exercised his intelligence to discover and avoid the danger, which he alleges was brought about by the negligence of the defendant." (*Sherris* v. *Northern Pac. Ry. Co. et al.*, 55 Mont. 195, 175 Pac. 271.)

Appellant contends that the damages awarded are inade-
**[5]** quate, and for that reason the judgment and order ap-
pealed from should be reversed, and the cause remanded for a
new trial, or that this court should of its own motion award
adequate damages, which the appellant fixes at $23,904, which
he claims is the cost of an annuity yielding $100 per month.
That a judgment may be reversed and a new trial ordered,
where the damages awarded are clearly inadequate under the
evidence, has been many times affirmed by this and other courts;
but this court never has assumed to exercise the authority or
power of "scaling a verdict upward." Appellant cites the fol-
lowing cases in this part of his brief: *Flaherty* v. *Butte Elec.
Ry. Co.*, 42 Mont. 89, 111 Pac. 348; *Phillips* v. *London, S. W.
Ry.*, 2 Q. B. Div. 78; *Rawitzer* v. *St. Paul City Ry. Co.*, 94
Minn. 494, 103 N. W. 499; *Meyer* v. *Hart*, 23 App. Div. 131,
48 N. Y. Supp. 904; *Marinai* v. *Dougherty*, 46 Cal. 26; *McCarthy*
v. *St. Louis Transit Co.*, 192 Mo. 396, 91 S. W. 132; *Burns* v.
*Merchants' etc.*, 26 Tex. Civ. App. 223, 63 S. W. 1061; *Usher*
v. *Scranton Ry. Co.* (C. C.), 132 Fed. 405; *Thompson* v.
*Burtis*, 65 Kan. 674, 70 Pac. 603; *Loevenhart* v. *Lindell
Ry. Co.*, 190 Mo. 342, 88 S. W. 757; *Lane* v. *United
Electric L. & W. Co.*, 90 Conn. 35, L. R. A. 1916C, 808, 96
Atl. 155; *Gans* v. *Woolfolk*, 2 Mont. 458; *Bielenberg* v. *Eyre*,
44 Mont. 397, 120 Pac. 243; *Atherton* v. *Fowler*, 46 Cal. 320;
*Spence* v. *Damrow*, 32 Neb. 112, 48 N. W. 880; *Tolchinsky* v.
*Schiff*, 47 Misc. Rep. 371, 93 N. Y. Supp. 1073; *Warner* v.
*Talbot*, 112 La. 817, 104 Am. St. Rep. 460, 66 L. R. A. 336,
36 South. 743.

The respondents take issue with this contention of appel-
lant and cite the following authorities: *Haley* v. *Mobile & O.
R. Co.*, 7 Baxt. 239; *Such* v. *Cleveland etc. R. Co.*, 2 Ohio Dec.
(Reprint) 352; *Smith* v. *Chicago, M. & St. P. Ry. Co.*, 6 S. D.
583, 28 L. R. A. 573, 62 N. W. 967; *Jenkins* v. *Hankins*, 98
Tenn. 545, 41 S. W. 1028; *De Luna* v. *Union Ry. Co.*, 130
App. Div. 386, 114 N. Y. Supp. 893; *Leahy* v. *Davis*, 121 Mo

227, 25 S. W. 941; *Silberstein* v. *Wm. Wicke Co.* (Super. Ct.), 22 N. Y. Supp. 170.

From our view of this case, these questions are not involved, [6] for here every act of negligence charged in the complaint is directly negatived by plaintiff's witnesses, except the lookout kept by the motorman, and that, to say the least, is thrown in doubt by the circumstances attending the injury. Just why deceased was on the track at that particular time, or how long he had been there, is not explained; whether he had just stepped on the track, or whether he had been there long enough for the motorman to see him in time to stop the car, or why he did not see that lighted, open car approaching him on a straight track of 540 feet, or what he was doing while Gustafson was walking and driving the horse across the track and ten or twenty feet beyond, and then stopping and looking to see what had become of Lund, are all matters unexplained. Had this cause been submitted to the jury on the evidence of plaintiff alone, and verdict returned for the defendants, it would have been amply sustained by the evidence, and then, when we add to this testimony that of the defendants as to the sufficiency of the lights, speed, control and condition of the car, the lookout kept by the motorman, the course followed by deceased in getting to and across the track, and the character of the ground which he passed over and the photographic evidence of the ground, we reach the conclusion that the defendants' motion for directed verdict should have been sustained on the general ground that the evidence of the plaintiff was insufficient to sustain a verdict and judgment in his favor.

If this were an appeal by the defendants, asking to have the verdict and order reversed, this court would be compelled to grant the reversal; but this is an appeal by the plaintiff from a judgment in his favor. The defendants (the respondents here) are not taking issue with the judgment, but, on the contrary, ask that both the judgment and the order appealed from be affirmed. To grant a reversal in this cause would be reversing a judgment and order at the instigation of the party—

in this case the plaintiff—on the sole ground that he failed in producing sufficient evidence to prove his cause.

We recommend that the judgment and order appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

*Affirmed.*

Rehearing denied July 2, 1921.

(Submitted April 22, 1921. Decided May 23, 1921.)