[Civ. No. 4226.   Third Appellate District.—December 15, 1930.]

W. O. TYSON, Respondent, v. JAMES R. C. BURTON, Appellant.

H. T. Morrow and Henry L. Knoop for Appellant.

John A. Rush and John L. Rush for Respondent.

MR. JUSTICE PLUMMER DELIVERED THE OPINION OF THE COURT.—The plaintiff had judgment in an action to recover damages for injuries suffered to his person, and also to his property, resulting from an automobile collision. From this judgment the defendant appeals.

The allegations of the complaint are that the injury to the plaintiff was caused solely by the negligence of the defendant. The answer denies the allegations of the complaint and charges that any injury suffered by the plaintiff was due to his own negligence.

No issue is made as to the amount of damages awarded the plaintiff. The collision occurred at about 9:30 A. M., at the intersection of Vermont Avenue and Los Feliz Boule-

vard, in the city of Los Angeles. The plaintiff was driving in an easterly direction on Los Feliz Boulevard, and the defendant was driving in a northerly direction on Vermont Avenue. A map attached to the transcript and used as an exhibit upon the trial of this cause, and presented to this court as correctly delineating the point of impact of the two automobiles, indicates that the collision took place on Los Feliz Boulevard at a point a trifle to the eastward from a line which would be coincident with the east curb line of Vermont Avenue if extended northerly across Los Feliz Boulevard. The car owned by the plaintiff, and which he was driving, was overturned at a point seventy-two feet from the east curb line of Vermont Avenue, and at a place near the south curb line of Los Feliz Boulevard. Los Feliz Boulevard is forty feet wide between the curb lines. Vermont Avenue is fifty-six feet wide south of Los Feliz Boulevard, and is divided by a parkway to the north of Los Feliz Boulevard. The south property line of Los Feliz Boulevard is forty feet south of the south curb of that street. The west property line of Vermont Avenue is twelve feet west of the west curb line of that avenue. Two questions are presented for consideration: The right of way of the respective drivers at the intersection of Los Feliz Boulevard and Vermont Avenue, depending upon whether section 23 of the California Motor Vehicle Act (Stats. 1923, p. 520) as it read at the time of the collision was intended to apply to and fix the intersection as being that portion of the respective streets which lay within the boundaries of the curb lines, or whether the intersection, as then defined by section 23 of the California Motor Vehicle Act, included the space within the property lines adjoining said intersection; and alleged errors on the part of the trial court in giving and refusing instructions.

■ Section 23 of the California Motor Vehicle Act, as it read at the time of the collision which took place on January 19, 1926, in defining "intersection", read as follows: "The area embraced within the prolongation of the boundary or property lines of two or more public highways which join one another at an angle, whether or not such public highway crosses the other." Section 131 of the Motor Vehicle Act (Stats. 1925, p. 412, sec. 15), as then in

effect, relative to the right of way, so far as applicable here, read as follows: "When two vehicles approach an intersection of public highways at approximately the same time, the vehicle approaching from the right shall have the right of way, provided such vehicle is traveling at a lawful speed." The term "public highway", as defined in section 21 of the act (Stats. 1923, p. 519), reads: "Every highway, road, street, alley, . . . dedicated or abandoned to the public, or intended or used by or for the general public, except such portions thereof as are used or prepared for use by pedestrians, as sidewalks", etc. Section 23 of said act, in the use of the term "public highways", must be read as referring to the definition of a public highway, as contained in section 21, and the right of way thereon must be determined by section 131. The court gave to the jury as an instruction section 23 of the California Motor Vehicle Act as it then read.

Upon this appeal it is urgently insisted that the words "boundary" and "property", as used in section 23, are synonymous, and that the boundary of the intersection involved in this action must be read as though it included the space between the curb lines and the adjoining property lines, which would place the south boundary line of what is meant by section 23 as forty feet south of the south line of Los Feliz Boulevard and twelve feet west of the west curb line of Vermont Avenue. This construction would give the right of way to an automobile traveling northward on Vermont Avenue over an automobile traveling eastward on Los Feliz Boulevard, provided it entered the area described as lying between the south curb line of Los Feliz Boulevard and the line drawn coincident with the property line forty feet south of the south line of Los Feliz Boulevard, over an automobile entering the area described as lying between the west curb line of Vermont Avenue and a line drawn parallel therewith and coincident to the property line twelve feet west of the west curb line of Vermont Avenue. The contention of the appellant being that the automobile driven by him had entered this forty-foot area, or had crossed the line coincident with the property line south of Los Feliz Boulevard before the plaintiff had crossed the twelve-foot area west of the west curb line of

Vermont Avenue. This construction would give to the defendant twenty-eight feet advantage in determining who had the right of way to cross the intersection of Vermont Avenue and Los Feliz Boulevard lying between the curb lines of the boulevard and avenue.

In support of their contentions counsel have cited a long list of authorities where it has been necessary to interpret and give meaning to the use of the word "or" as it appears in statutes and contracts. A reference to "Words and Phrases", both to the first and third series, indicates that the meaning is given to that word according to the sense in which it is used, and as nearly as possible to effect the intent and purpose of the legislature. Unless otherwise necessitated, the use of the word "or" is interpreted in its ordinary or elementary sense, which, as stated in *Pompano Horse Club* v. *State*, 93 Fla. 415 [52 A. L. R. 51, 111 South. 801], is as follows: "In its elementary sense the word 'or' is a disjunctive particle indicating an alternative. It often connects a series of words or propositions presenting a choice of either." We find also, in "Words and Phrases", that the word "or" is sometimes used as a conjunctive as well as a disjunctive, and that the word "or" is frequently used interchangeably with the word "and", and if it becomes necessary to correctly interpret and apply the meaning of the legislature, the word "and" will be read in place of the word "or". (See 5 Words and Phrases, 3d series, p. 654 et seq.)

To properly interpret the use of the words which we are considering we must first ascertain the intent actuating the legislature. By reading sections 21, 23 and 131 together, it is evident that the legislature had in mind the purpose of setting forth a rule of law which would define the right of way to automobile drivers about to use the public highway, as defined by section 21; that is, the portions thereof as are used by vehicles as contradistinguished from other portions used by pedestrians, or reserved for sidewalk or other kindred purposes; and that the location of the property line outside of the area devoted to vehicular traffic was not intended to be included within a street or highway intersection. That the legislature intended to, and the language of the sections considered include only the

area bounded by the curb lines of the streets involved, where the intersection of the public highway chances to be a city street, is further supported by the fact that outside of incorporated cities the boundary or exterior lines of public highways are almost universally coincident with adjoining property lines, thus in both cases enforcing the idea that the portion of the public highway, whether outside or inside incorporated cities, when intersections are mentioned, refers to and means only that area available for vehicular traffic.

This interpretation fully answers the contention of the appellant that the court erred in refusing requested instructions which would enlarge the area of street intersections so as to include considerable territory not available for use by vehicular traffic. The interpretation which we think is the common-sense view of the sections considered also determines the right of way between the parties to this action. This is shown by the testimony of the defendant himself, only one sentence of which we need to here set forth, to wit: ''Assuming that the intersection on the south side is marked by the property line prolongated by Vermont avenue, and on the west by the property line prolongated across Los Feliz, I was in the intersection long before Mr. Tyson, to my recollection.'' As we have heretofore shown, the area in which the defendant placed himself and his automobile began at a line forty feet south of Los Feliz Boulevard, and within which territory he may have been, as testified by himself, and yet the right of way would unquestionably belong to the plaintiff Tyson, if the automobile driven by him were nearer the intersection than the distance within the forty-foot area claimed by the appellant as marking the line where their respective rights began. All the credible testimony in the case is to the effect that the plaintiff was nearer the intersection than the defendant, and actually entered the intersection, as we have defined it, before the defendant did so. We say ''credible testimony'' because the testimony of the one witness for the defendant, when analyzed, shows a complete misconception of both time and distance.

It may be further said that if the appellant desired a more explicit instruction be given to the jury, relative to

intersections, than the reading of section 23 of the California Motor Vehicle Act, it was appellant's duty to ask for a correct instruction more fully defining the area included within the term "intersection", and not to rest his case upon the requesting of instructions manifestly erroneous.

It is further insisted that the court erred in giving to the jury an instruction in these words: "You are instructed that the presumption is that every man obeys the law, and the presumption in this case is that the plaintiff was traveling at a lawful rate of speed and in his rightful place. This presumption is in itself a species of evidence, and it shall be considered by you in your deliberations." This instruction was given to the jury on the theory that certain subdivisions of section 1963 of the Code of Civil Procedure warrant the application of the presumptions there mentioned. Just how this instruction can be considered proper, where each party to an automobile collision charges the other with the sole negligence which resulted in the collision, and the circumstances attending the collision are fully testified to by the respective parties and also by eye-witnesses, does not clearly appear. It would seem that both parties would be equally entitled to the presumption of taking ordinary care for his own welfare, and also that he was obeying the law. In support of the instruction, however, we are cited to the case of *Olsen* v. *Standard Oil Co.*, 188 Cal. 20 [204 Pac. 393, 395], where a somewhat similar instruction was given to the jury reading as follows: "The presumption is that every man obeys the law, and the presumption in this case is that the plaintiff was traveling at a lawful rate of speed, and on the proper side of the highway at all times. This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until, and unless it is overcome by satisfactory evidence." At first reading it might seem that the approval of the instruction which we have just quoted is conclusive in favor of the instruction involved in the instant case. A closer inspection of the instruction given in the Olsen case and relied upon by the respondent in support of the instruction given in the instant case, shows that the two instructions are readily distinguishable. In the instant case no limitation is placed upon the instruction, and the pre-

sumption was not only declared to be a species of evidence, but was to be considered by the jury at all times in its deliberations, and in that particular differs very materially from the limitation placed upon the instruction in the Olsen case. There it is said: "This presumption is in itself a species of evidence, and it shall prevail and control your deliberations until, and unless it is overcome by satisfactory evidence." It may be further observed that the opinion in the Olsen case does not cite or analyze any former cases where a like presumption has been held applicable to instances where all the parties are alive and the circumstances are fully testified to by them and by eye-witnesses. The cases which have been called to our attention, and which we have been able to discover where the presumption as to taking care of one's self and obeying the law, relate to instances where one of the parties is deceased. As said in *Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083, 1085]: "There is also another well recognized rule of law applying to accidents like the one in the case at bar, to-wit, that deceased is presumed to have exercised ordinary care for his own safety." This rule is fully and fairly stated by Mr. Justice Henshaw in the case of *Crabbe* v. *Mammoth Channel G. M. Co.,* 168 Cal. 500 [143 Pac. 714, 716], as follows: "Where death is occasioned under circumstances such as this, without eye-witnesses, the law comes to the aid of the plaintiff who is pressing a suit for damages for the death, and that law is found in the presumption of the Code of Civil Procedure—namely, that a person takes ordinary care of his own concerns. (Sec. 1963, subd. 4, Code Civ. Proc.) This is a controvertible presumption, it is true, but until controverted, it is evidence in accordance with which the jury is bound to decide." (Citing *Boyle* v. *Coast Imp. Co.,* 27 Cal. App. 714 [151 Pac. 25]; *Kreitzer* v. *Southern Pac. Co.,* 38 Cal. App. 654 [177 Pac. 477].) And as said in the leading case of *Larrabee* v. *Western Pac. R. Co.,* 173 Cal. 743 [161 Pac. 750, 751]: "But touching the presumption that the deceased exercised ordinary care, it is to be noted that that presumption is given weight only in the absence of evidence on the subject of the deceased's conduct. It has been declared to be an artificial presumption of so weak a character that it is not to be allowed to have

the effect of evidence before the jury, where the uncontradicted evidence of the circumstances attending the accident overthrow it." A large number of cases are cited in this opinion.

A well considered opinion citing authorities on the subject of the application of the presumption that a party takes due care of his own welfare is to be found in the case of *Ross* v. *San Francisco O. T. Rys. Co.*, 47 Cal. App. 753 [191 Pac. 703]. It is there held that the presumption is applicable where one party is deceased, and the death of the party is alleged to be due to the negligence of the one against whom the action is prosecuted and there were no eye-witnesses to testify to facts controverting the presumption. To the same effect is the case of *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709]. In that case there was no testimony as to the conduct of the defendant, and the presumption of due care was allowed to support the judgment. See, also, *Blackwell* v. *American Film Co.*, 189 Cal. 689 [209 Pac. 999]; *Carpenter* v. *Atchison, T. & S. F. R. Co.*, 51 Cal. App. 60 [195 Pac. 1073].)

In the case of *Ryan* v. *Union R. Co.*, 46 Utah, 530 [151 Pac. 71, 74], the Supreme Court of Utah, considering the question of presumptions, held as follows: "In the absence of evidence, there is a presumption that the deceased used due care, and for his protection did all that reasonably was required of him. . . . When, however, facts and circumstances are proven to show just what the deceased did, or failed to do, then his care or wantonness is to be determined not on the presumption, but upon the facts and circumstances proven."

It is further held that where all the facts and circumstances were proven, the court is not authorized to cast a presumption into the scales in favor of the plaintiff.

In the case of *Osterholm* v. *Butte Elec. R. Co.*, 60 Mont. 193 [199 Pac. 252, 255], the Supreme Court of Montana thus speaks of the presumption we are considering: "This statute, however, applies to a defendant as well as to a plaintiff, and one of the questions at issue here is whether the proper amount of care was used. The plaintiff charges negligence on the part of the defendants. The defendants charge negligence on the part of the plaintiff. The court has

no more right to presume that the deceased used ordinary care than it has to presume that the defendant used ordinary care. This is one of the questions of fact at issue.''

A number of the decisions are to the effect that the presumption is not to be considered evidence in any case, but irrespective of those decisions, the overwhelming weight of authorities, as shown by the long list of cases cited in appellant's brief, is to the effect that where all the circumstances attending the collision of two automobiles is fully testified to by eye-witnesses, including the testimony of the parties themselves, that the cause is to be determined by the jury upon the facts and circumstances testified to, and not upon a presumption that one of the parties obeyed the law, and that the other party did not.

Our attention is also called to the recent case of *Western & Atlantic R. R.* v. *Henderson* (decided May 27, 1929), 279 U. S. 639 [73 L. Ed. 884, 49 Sup. Ct. Rep. 445, 447], where the United States Supreme Court has held that a Georgia statute declaring that a railroad company shall be liable for damages to person or property, by the running of its trains, unless the company shall make it appear that their agents have exercised all reasonable or ordinary care and diligence, the presumption in all cases being against the company, to be violative of the Fourteenth Amendment of the United States Constitution. The action was prosecuted to recover damages for a death occurring at a grade crossing on a public highway, the appellee's husband, the driver of a motor-truck, having been killed in a collision between the motor-truck which he was driving, and a train operated by the company. In considering the question of the presumption, the Supreme Court said: ''Upon the mere fact of collision and resulting death, the statute is held to raise a presumption that defendant and its employees were negligent in each of the particulars alleged, and that every act or omission in plaintiff's specifications of negligence was the proximate cause of the death; and it makes defendant liable unless it showed due care with respect to the matter alleged against it. And, by authorizing the jury, in the absence of evidence, to find negligence in the operation of the engine and train, the court necessarily permitted the presumption to be considered and weighed as evidence

against the testimony of defendant's witnesses tending affirmatively to prove that such operation was not negligent in any respect.'' The court further held that the mere fact of the collision between the railway train and vehicle at a highway crossing furnishes no basis for any inference as to whether the accident was caused by the negligence of the railway company or the traveler on the highway, or of both, or without fault of anyone. It was further held that the presumption provided for in that case was unconstitutional in that it violated the due process clause of the Fourteenth Amendment. The presumption provided for in the Georgia statute, to be indulged in against the defendant in the event of a collision, is the counterpart of the presumption awarded to the plaintiff in the instant case, in determining who was at fault.

It is further contended on the part of the appellant that the court erred in refusing to give to the jury the following requested instruction: ''You are instructed that the mere fact, alone, that there was a collision between defendant's automobile and plaintiff's automobile, raises no presumption at all that the defendant was in any way responsible for such occurrence.'' While the language of this requested instruction may be a correct statement of the law, it is apparent that it sets forth only a principle that is applicable to both parties. As a matter of common knowledge the conclusion is unescapable that where two automobiles collide in broad daylight upon an open intersection, that one or the other of the drivers is negligent, and possibly both, and the question as to which driver is negligent should be left for the jury to determine upon the facts and circumstances testified to by the eye-witnesses and the parties involved.

What we have said herein, however, does not necessitate a reversal of the judgment. The testimony is overwhelming that the defendant in this case is, and was responsible for the injuries resulting from the collision. The testimony is all to the effect that the automobile driven by the plaintiff was within the intersection before the entry thereof by the defendant, and as we have said, the testimony of the defendant himself practically admits this contention. The fact that he was in error as to the true boundary line of the intersection does not relieve him from

responsibility, and even though it be held that under the circumstances of this case the giving of the challenged instruction was improper, there has been no miscarriage of justice, as the jury could not very well have brought in any other verdict.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 14, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1931.