[Crim. No. 141.　Third Appellate District.—February 7, 1911.]

THE PEOPLE, Respondent, v. JOSEPH MONTGOMERY, Appellant.

CRIMINAL LAW—ASSAULT WITH DEADLY WEAPON—QUESTION OF LOADED GUN—SUPPORT OF VERDICT—CONFLICTING EVIDENCE—FACTS AND CIRCUMSTANCES.—Though an assault with an unloaded gun is not an assault with a deadly weapon for want of a present ability to do a violent injury, yet the question whether the gun was loaded was one of fact for the jury, and, notwithstanding the testimony of the defendant to the contrary, it is held that the facts and circumstances in proof were such that the jury had the right to disregard his testimony, and find from such facts and circumstances, connected with his course of conduct, acts and threats that the gun was loaded, and to justify their verdict of guilty of the offense charged.

ID.—POINTING OF LOADED GUN—RESULT OF QUARREL.—The jury having found that the gun was loaded, under evidence that it was obtained as the result of a previous quarrel, the pointing of it toward the other party to such quarrel with the threat shown, constituted, under the circumstances, an assault with a deadly weapon.

ID.—DISTANCE OF ASSAILANT FROM INTENDED VICTIM.—The distance of the assailant from the intended victim is immaterial, provided it be near enough to effect his unlawful intent. A distance of about twenty feet is sufficiently near to justify a conviction for an assault with a deadly weapon.

ID.—INSTRUCTION—SELF-DEFENSE IN PREVIOUS QUARREL.—An instruction as to self-defense in the previous quarrel before defendant went after the gun is not relevant to the offense of an assault with a deadly weapon which occurred later, for which the defendant was being tried, though the evidence of the previous quarrel was material as bearing upon what followed. But no instruction as to the relative rights and duties of the parties in connection with the previous quarrel could affect the responsibility of the defendant for his subsequent acts, though it is held that the instruction was not prejudicial to the defendant.

Id.—Refusal of Instruction Elsewhere Given.—Where the jury were fully and correctly instructed on the point contained in a requested instruction, the refusal to give it was without prejudice.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order denying a new trial. Geo. D. Murray, Judge.

The facts are stated in the opinion of the court.

J. A. Prentice, and Henry L. Ford, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

CHIPMAN, P. J.—Defendant was informed against for the crime of assault with a deadly weapon, with intent to kill and murder one William F. Freehardt. The jury found the defendant guilty of an assault with a deadly weapon and recommended the defendant to the mercy of the court. The court sentenced defendant to pay a fine of $600, and, in default of payment, to be confined in the county jail for the term of one day for each two dollars of said fine and until said fine is paid. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

It is urged, as the principal ground for a reversal, that there is no evidence that the gun, with which the alleged assault was committed was loaded; that the evidence showed that it was not loaded, and that there is no evidence from which the jury could have inferred otherwise.

It has been held by our supreme court that the pointing of an unloaded gun at the prosecuting witness accompanied by a threat to shoot him, without any attempt to use it otherwise, is not an assault with a deadly weapon, and cannot sustain a conviction for an assault with a deadly weapon, for want of a present ability to commit a violent injury on the person in the manner attempted. (*People* v. *Sylva,* 143 Cal. 62, [76 Pac. 814].)

It is not shown that defendant was, at the time of the alleged assault, near enough to the prosecuting witness, Freehardt, to injure him otherwise than by discharging the gun. The conviction must rest upon evidence from which the jury

had the right to infer that the gun was loaded and that defendant threatened, or that he so conducted himself as would justify the inference that he intended to discharge it at Freehardt, with the purpose of committing a bodily injury upon him.

There was no direct evidence that the weapon was loaded. Defendant claims that there was evidence that it was not loaded. But this evidence was by no means conclusive, unless we are to accept the testimony of the defendant which the jury discarded.

In common with a very large per cent of the crimes with which the courts have to deal, this one may be traced to the saloon for its origin, and it is evident that the recommendation of the jury, as well as the lightness of the sentence, is to be attributed to the condition of intoxication to which defendant had brought himself by drink.

Freehardt was working in a livery-stable at Blue Lake, Humboldt county. About 8 or 9 o'clock of the night of December 11, 1909, one Elkhorn went with defendant to the stable where Freehardt was working "to get a rig" with which to take Elkhorn home; he was very much intoxicated and Freehardt told him to go and lie down on the cot awhile and he would take him home. Defendant then spoke up and said he would drive him home. Freehardt told defendant he had orders that defendant was not to have a team at any time, which seemed to offend defendant. Freehardt put Elkhorn on the cot, to which defendant objected, and there followed a somewhat serious altercation between the two men, in the course of which, it was testified, defendant endeavored to assault Freehardt with a knife, and defendant was considerably injured by the blows he received from Freehardt. He went to his home, a short distance away, got a rifle, and, after sufficient time had elapsed for him to cool his anger, he returned to the stable, approached the place where Freehardt was harnessing a horse to take Elkhorn home. Freehardt testified: "I think I had the breast strap in my hand when I went in the stall, when I saw him [defendant] with the gun coming around. Of course, I jumped around. Q. What did he do with the gun at that time? A. He leveled the gun down on me when he saw me, he said, 'I have got you now, you son-of-a-bitch.' " Freehardt ran behind a post,

halloed for help, and crossed into a room where there was a
telephone and called up the proprietor of the stable, one
Worthington. Defendant went out of the stable; Worthing-
ton came across the street toward the stable, and he testified
that he found defendant crouched behind the public scales
not far from the stable with his gun across his arm, "stoop-
ing over and watching the barn." He told defendant he had
no business there and that he had better go home or "he would
have the constable take charge of him." Defendant refused
to move and Worthington took hold of him and led him away.
He testified: "And just as I got to the corner as you turn
going to Merriam's we were talking and I told him if he did
not stay away from there I would have him arrested, and
he said 'I will fix the whole bunch of you,' and I went on
around the corner." It appeared that defendant found his
way home and was in bed when arrested the same night, and
the undisputed evidence was that he was very much intoxi-
cated. The foregoing are briefly the principal facts from
which the jury were asked to draw, and did draw, the infer-
ence, as we must assume, that the gun was loaded. That
defendant was enraged toward Freehardt when he left the
barn and went after the gun; that he returned very soon
thereafter and accosted Freehardt in a manner to indicate
that the gun was loaded, for otherwise his declaration, made
at some distance from Freehardt, "I have got you now,"
would have been meaningless; that he did not leave the prem-
ises when he heard Freehardt call for help over the telephone,
but took a position near the barn, partially hidden by the
scales, and where he could see the door and where he was
when Worthington found him with the gun and looking toward
the barn; that his anger had not yet cooled, as was indicated
by his threat to Worthington that he would "fix the whole
bunch"—all these facts and circumstances had a tendency to
prove that the gun was loaded, and it was for the jury to say
whether the evidence showed this to their minds beyond a
reasonable doubt. The gun was not taken by the officer who
made the arrest, but was called for by its owner some days
afterward, and he testified that it was not then loaded. There
is testimony by defendant's wife that the gun had rested un-
disturbed where defendant left it until called for by the
owner. She testified that she did not know whether it was

loaded, but she was not at their home when defendant returned to it. How much weight the jury attached to her testimony or to defendant's testimony we cannot know and their right to reject it entirely is beyond dispute. We think there were facts and circumstances sufficient to justify the implied finding that the gun was loaded when defendant said to Freehardt, "I have got you now," and to further justify the verdict rendered.

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, sec. 242.) The jury having found that the gun was loaded, the pointing of it toward Freehardt with the threat shown, constituted, under the circumstances, an assault with a deadly weapon. It was so held in *People* v. *Wells,* 145 Cal. 138, [78 Pac. 470]. In that case the pistol was quite close to the person threatened, but the distance of the assailant from his intended victim is immaterial if he be near enough to effect his unlawful intent; in the present case the distance was about twenty feet. Instruction VIII was, therefore, a correct statement of the law.

Defendant assigns error in giving instruction X½, page 16 of the record. This instruction is marked IX½. It deals with the law of self-defense and has reference to the altercation between defendant and Freehardt before defendant went after the gun. We do not see what relevancy the instruction had to the assault which occurred later and for which defendant was being tried. The evidence in relation to it was material as bearing upon what followed, but no instruction as to the relative rights and duties of the parties in connection with it could affect the responsibility of defendant for his subsequent acts, which were entirely independent of and separated from the first affray. We do not see, however, that the instruction could have prejudiced defendant in any way. We think it did not.

Defendant was denied the following instruction: "I instruct the jury that the pointing of a gun is not an unlawful act, and I charge that the defendant would have the right to take the gun with him on the street and in the Worthington stable, so long as in so doing he did not take it there for the purpose alleged in the information and did not use it in such manner as to amount to a reckless disregard of human life." The jury

were fully and correctly instructed on this point, and defendant was not prejudiced by being denied this instruction.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.