[Crim. No. 244.   Second Appellate District.—July 16, 1912.]

THE PEOPLE, Respondent, v. CHARLIE ROSS, Appellant.

CRIMINAL LAW—ASSAULT WITH DEADLY WEAPON UPON CITY RECORDER—
UNLAWFUL ATTEMPT TO SEARCH DEFENDANT'S HOUSE—EVIDENCE—
IMPROPER CONVICTION.—Where a city recorder made an attempt to
enter defendant's house to search the same for liquor, without a
proper search-warrant delivered to any officer, and the defendant
used a loaded pistol to prevent such entry, and the defendant was
charged and convicted in the superior court upon a felony charge
of an assault with a deadly weapon, and the uncontradicted evidence
of the recorder showed that defendant had "every chance to fire the
gun if he wanted to," that "nothing prevented him from doing it,"
that he did not do so, and "made no attempt on his part to discharge
the firearm," such evidence shows that no circumstance, independent
of the will of the accused, intervened to prevent the consummation
of the assault, and the evidence is insufficient to convict the defend-
ant of the felony charged.

ID.—UNDELIVERED SEARCH-WARRANT PREPARED BY RECORDER—SUSPENSION
OF JUDGMENT ON PLEA OF VIOLATING LIQUOR ORDINANCE—IMPROPER
EVIDENCE.—Neither a search-warrant prepared by the city recorder
and held in his hands without delivery to any proper officer for its
enforcement, nor a former suspension of sentence by him during
good behavior under a plea of guilty of violating a liquor ordinance,
constituted any authority of the recorder for invading defendant's
premises to search the same for liquor; and it was prejudicial error
against the rights of the defendant to admit evidence touching such
matters, which should have been excluded upon defendant's objec-
tion thereto.

ID.—ERROR IN EVIDENCE EMPHASIZED BY ERROR IN INSTRUCTIONS—
POWER OF CITY RECORDER AS PROBATION OFFICER.—The error in evi-
dence was emphasized by errors in instructing the jury to the effect
that the city recorder, as such, by reason of the suspension of his
sentence during defendant's good behavior, was empowered to enter
his premises and search the same, and supervise his conduct, and that
as to defendant, the recorder was for the time vested with all the
rights and powers of a probation officer appointed by the superior
court.   It is held that no law appears conferring such authority upon
a city recorder, and that other instructions given as to defendant's
conduct and the rights of the recorder were conflicting and prejudi-
cial.

ID.—CITY RECORDER A TRESPASSER—RIGHT OF DEFENDANT TO RESIST.—
The position of the city recorder was that of a trespasser on de-

fendant's premises, claiming the right to enter his home for liquor, and his acts constituted an invasion and injury to the rights of the defendant, who, under sections 692 and 694 of the Penal Code, was entitled to employ sufficient resistance to prevent the commission of the offense, though not to the extent of committing a homicide.

ID.—ACTS SHOWN MAY CONSTITUTE MISDEMEANOR BUT NOT FELONY— VERDICT IMPROPERLY REACHED.—It is held, conceding that the acts of the defendant, as shown, might constitute a misdemeanor, as defined in section 417 of the Penal Code, yet that they were insufficient to constitute the felony charged; and that the record shows that the verdict was improperly reached by the consideration of incompetent evidence, considered in the light of erroneous instructions.

APPEAL from a judgment of the Superior Court of Imperial County, and from an order denying a motion for a new trial. Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

Earl Rogers, W. H. Dehm, and H. L. Giesler, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—Defendant was convicted upon an information charging him with the crime of assault with a deadly weapon. The judgment of the court was that he be imprisoned for a term of one year in the state prison at Folsom and pay a fine of $2,000.

From this judgment and an order denying his motion for a new trial defendant appeals.

At the time in question defendant was conducting a public feed-yard in the city of Imperial, within which inclosure was located a shack or house wherein he lived. Victor Sterling, upon whom the alleged assault was committed, was city recorder of Imperial. Some time prior to the alleged assault defendant had, in the recorder's court presided over by Sterling, pleaded guilty to the charge of violating a liquor ordinance of the city of Imperial; whereupon it was adjudged that he should pay a fine of $300 and serve ninety days in jail, the execution of which sentence, however, was "suspended during defendant's good behavior." On November 20, 1911, the day upon which the assault is alleged to have been com-

mitted, Sterling, having been informed that defendant was in possession of a quantity of liquor with the intent to use the same in violation of law, wrote out a search-warrant directed to any sheriff, marshal, constable, or policeman in Imperial county, commanding such officer to search the house, buildings and rooms of defendant for beer in bottles and whisky in bottles, jugs or kegs. He never issued or delivered this warrant to any officer empowered to execute the same, but, retaining it in his possession, he called to his aid three persons, two of whom were city marshals of Imperial, and all of whom were in fact armed, and these four went in an automobile to defendant's feed-yard for the dual purpose, as stated by Sterling, "to investigate if he [defendant] was keeping good faith with the court," and to see if he had any liquor on the premises. Upon driving inside the inclosure, his armed escort, making no display of their arms, however, remained in the automobile and Sterling got out and proceeded toward the house of defendant, about one hundred and fifty feet from the point where they had stopped. He inquired for Ross, who, when Sterling was about twenty feet from the house, came out, whereupon Sterling said to him: "We have the necessary papers and we want to see what you have here." Ross drew a pistol from his pocket and, saying: "I have had enough of you sons-of-bitches," pointed it at Sterling and told him, in effect, to leave the premises, threatening to shoot him. Sterling, while parleying with defendant, walked toward the automobile, and defendant, with a rifle which, during the parley, he had secured from his house, and still pointing the pistol at Sterling, followed him thirty or forty feet until Sterling got into the machine and with his companions drove away. The uncontradicted evidence further shows that defendant "had every chance to fire the gun if he wanted to," that "nothing prevented him from doing it," that he did not do so and "made no effort on his part to discharge the firearm."

The record bristles with error. Neither the alleged search-warrant prepared by the city recorder, but never issued to any officer authorized to execute the same, nor the suspension of the sentence imposed upon defendant upon his plea of guilty to the charge of violating the liquor ordinance of the city of Imperial, constituted any authority on the part of Sterling for

invading defendant's premises and engaging in a search of his home to see what he had there. Hence, all evidence admitted over defendant's objections touching these matters should have been excluded. Not only were these errors highly prejudicial to defendant's rights, but the effect thereof was greatly accentuated by an instruction given by the court in response to a request of the jury for further information as to certain matters as follows: After the lapse of some twenty hours, during which the jury had failed to reach a verdict, it was brought into court, when the foreman said: "We want to ask if Mr. Sterling visited that place as an officer or as a private citizen? Did he have the right officially to visit that place? The Court: The court might answer that question by giving you some further instructions. Foreman: There is another question almost the same. We want to know if Victor Sterling as recorder, if he releases a man on probation, if he then is probation officer so far as that man is concerned." In reply to these questions the court said: "There is no other provision, I believe, in the inferior courts for the supervision of those placed on probation on their good behavior than that the judge of the court has the entire supervision of the case. The superior court has a probation officer, an assistant officer to the court, to attend to those matters, but the inferior courts have no assistant and no officer to assist them in matters of that kind. If there is a criminal matter, they have the right to call upon the peace officers to serve papers or to do anything to carry out the orders of the court, but as to probation or parole, the transactions are entirely between the highest officer of the court, the judge, and the person placed on parole." It thus appears that, in effect, the court instructed the jury that Sterling, as city recorder, by reason of the suspension of sentence during defendant's good behavior, was empowered to enter his premises and search the same and supervise his conduct, and that as to defendant he (Sterling) was for the time vested with all the rights and powers of a probation officer appointed by the superior court. We know of no law conferring such authority upon a city recorder. Other questions asked by the jury were the following: "We want to know if Victor Sterling, as probation officer, had a right to serve a search-warrant?" "Some of the jurors want to know if he had a right to go there and serve a search war-

rant?" "Has a judicial officer, or Victor Sterling, a right, as a judicial officer, to visit that man's place any more than any other private citizen?" It is plainly apparent from the questions asked by the jury that they were impressed with the evidence, erroneously admitted, showing not only that Sterling had a search-warrant in his pocket when he visited defendant's place, but also showing that defendant at the time was under a suspended sentence imposed by Sterling as city recorder, which fact, they were instructed by the court, gave Sterling as such officer "the entire supervision of the case." Moreover, by instruction No. 16 the jury were told that "presenting a loaded gun at a person who is within range is an assault, . . . if accompanied by such circumstances as denote an intention existing at the time, coupled with a present ability, of using actual violence or inflicting violent personal injury upon another; and if under such circumstances a defendant exacts a condition to be at once performed, which he has no legal right to impose, and his intent is immediately to enforce performance of that condition by violence, and he places himself in readiness and in position so to do, and proceeds as far as it is then necessary for him to go in order to carry out his intention, then it is in law as much an assault as if he had actually shot at the other party and missed him." The evidence erroneously admitted, showing that defendant was at liberty under a suspended sentence imposed by the city recorder, who, as erroneously stated by the court, possessed the right to supervise his conduct, etc., was clearly calculated to impress the jury with the fact that Sterling had a legal right to invade defendant's premises in a search for liquor, and, therefore, since Sterling was acting under power legally vested in him, defendant, as stated in the instruction last quoted, exacted a condition to be at once performed *which he had no right to impose.*

By instruction No. 14 the jury were told an attempt can be manifested only by an act which will end in the consummation of the offense but for the intervention of circumstances independent of the will of the accused. The uncontradicted evidence of Sterling that defendant had "every chance to fire the gun if he wanted to," that "nothing prevented him from doing it," that he did not do so and "made no effort on his part to discharge the firearm," makes it apparent that no cir-

cumstances independent of the will of the accused intervened to prevent the consummation of the assault.  Moreover, instruction No. 15, clearly in conflict with instruction No. 14, was well calculated to, and no doubt did, prevent the jury from giving due or any consideration to the evidence in the light of instruction No. 15.  By instruction No. 15 the jury were told that the voluntary abandonment of the alleged attempt by defendant constituted no defense.  As applied to the facts of this case, this latter instruction is not only inapplicable, but irreconcilable with the statement as to the law made in the instruction immediately preceding it.  The position of Sterling was that of a trespasser upon defendant's premises.  He was there with the avowed intention of unlawfully entering and searching his home for whisky.  Such acts constituted an invasion and injury to the rights of defendant, and under sections 692 and 694, Penal Code, he was entitled to employ sufficient resistance to prevent the commission of the offense (not to the extent, however, of committing a homicide—section 197, Penal Code), about to be committed by the trespasser.  Conceding that the acts of defendant might constitute a misdemeanor, as defined by section 417, Penal Code, nevertheless, under the circumstances here shown, they were insufficient to constitute the felony charged.  The circumstances clearly distinguish this case from the facts disclosed in *People* v. *Montgomery,* 15 Cal. App. 315, [114 Pac. 792], and *People* v. *Wells,* 145 Cal. 138, [78 Pac. 470], where the assault was made by the trespasser, and the consummation thereof was prevented by acts of others and independent of the will of the accused.

An examination of the entire record convinces us that the verdict of the jury was reached by a consideration of incompetent evidence considered in the light of erroneous instructions, from which they concluded that in the invasion of defendant's home for the avowed purpose of searching his effects, Sterling was acting within his power as city recorder, and that defendant was not warranted in offering any resistance to prevent the same; and further, that, notwithstanding the voluntary abandonment of the alleged attempt by defendant before the consummation of the offense, which the evidence tended to prove, he was, nevertheless, guilty as charged.

It is unnecessary to discuss other alleged errors as to instructions both given and refused. We are satisfied that the judgment and order should be reversed, and it is so ordered.

Allen, P. J., and James, J., concurred.