[Civ. No. 12239. Second Appellate District, Division Two.—September 13, 1939.]

SUSIE E. GAY et al., Respondents, v. CADWALLADER–GIBSON CO., INC., et al., Appellants; PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation), Lien Claimant.

W. I. Gilbert for Appellants.

Randall J. Hood for Respondents.

F. Britton McConnell and Claude F. Weingand for Lien Claimant.

WOOD, Acting P. J.—Charles C. Gay was killed May 20, 1937, in an accident in which he was struck by a motor vehicle driven by defendant Lye, who was operating the vehicle in the course of his employment by Cadwallader-Gibson Co., Inc., hereinafter referred to as the lumber company. The action was commenced by the heirs at law of decedent to recover damages suffered because of his death. Defendants appeal from a judgment in favor of plaintiffs.

Decedent was at the time of his death and had been for a period of approximately twelve years in the employ of Pacific Portland Cement Company, hereinafter referred to as the cement company, and of its predecessor, Standard Gypsum Company. The cement company and the lumber company were lessees of adjoining parcels of real property from Craig Shipbuilding Company. The cement company's lease was dated April 11, 1925, and contained the provision that the lessors reserve the right, ''To maintain and use the switch track now crossing the southwesterly portion of said demised premises, the approximate location of which is shown

on said annexed map in red and black, such use, if said Lessee so desires, to be a joint use, each interfering with the use of the other as little as reasonably practicable.'' The switch track and the pathway hereinafter referred to were on a small parcel of land, a trifle less than one acre immediately adjoining the premises on which was erected a plant operated by the cement company. In 1927 the lumber company executed a lease with the Craig company and commenced to use the parcel of land just referred to jointly with the cement company. In 1934 an oral agreement was made by and between the lumber company and the Craig company by which the lumber company agreed to pay taxes on the parcel of land and would have the control of it. This oral agreement was not communicated to the cement company.

■ There is no discussion in the briefs concerning the rule of law that the purchaser or lessee of land is bound to take notice of all easements and servitudes which are apparent on inspection of the property. We will therefore take up the contention of plaintiffs that the findings are supported by the evidence and that they in turn support the judgment. The trial court found that it was necessary for decedent to use and he was making use of and traversing a well-defined pathway which ran relatively parallel with and in close proximity to the property and buildings in the possession and under the control of his employer; that the pathway was located on property in the possession and control of the lumber company; that the pathway in question had been in constant and continuous use by the cement company and its predecessor and their employees for a long time preceding the accident; that defendant Lye negligently operated a vehicle, known as a lumber carrier, resulting in the death of decedent. The court further found: ''That said defendant, Valentine Lye, at the time of and for a long time prior to the date of said accident, had knowledge of and knew of the existence of and the location of said pathway, and knew and had knowledge of the use being made thereof by the employees of said Pacific Portland Cement Company, and by said deceased, Charles Calloway Gay, and at all times had knowledge of and knew that said employees of said Pacific Portland Cement Company were constantly and continuously making use of and were traversing said well-defined pathway, and at all times knew that the various employees of said Pacific Portland Cement Company, includ-

ing said deceased, Charles Calloway Gay, might be making use of and might be traversing said well-defined pathway at any time, and that various of said employees, including said deceased, Charles Calloway Gay, might reasonably be expected to be where said deceased was at the time of said accident; that said defendant, Valentine Lye, negligently failed to see and discover the presence of said deceased, Charles Calloway Gay, at the place where said accident occurred, prior to the happening of said accident.''

It appears from the evidence that the pathway referred to in the findings ran immediately beside the spur track referred to in the lease; that it was in daily use by the employees of the cement company in passing from one doorway to another in the cement company's plant; that for many years and up to the time of the accident both the lumber company and the cement company had used the parcel of land in question without objection from either of them. Cars of the cement company were stopped on the right of way for unloading crude gypsum and for the purpose of making repairs. Employees of the cement company daily walked up and down the pathway, which was their only means of getting to their crusher house. Defendant Lye testified: ''I have observed, on many occasions, that there is a doorway going into this rock crushing house, and I have seen that people went in and out through that doorway by means of walking along this right-of-way.'' In a conversation with the witness Bell, defendant Lye, after stating that it was customary for him to drive back and forth, stated that it was a privilege both companies enjoyed.

A photograph of the lumber carrier appears in the record. It is a high vehicle which does not afford its operator such a clear vision as is ordinarily afforded by drivers of automobiles. On the day of the accident defendant Lye loaded the carrier with lumber, backed it away from the lumber yard and started forward down the spur track, at which time he was traveling at the rate of 10 or 12 miles per hour. Decedent had just previously emerged from the plant of the cement company with his loaded wheelbarrow and had turned down the pathway when the lumber carrier overtook him from the rear, striking the wheelbarrow and causing injuries which resulted in his death.

The contention of defendants that the findings do not support the judgment cannot be sustained. The trial court ex-

pressly found that the driver of the lumber carrier knew that decedent "might reasonably be expected to be where said deceased was at the time of the said accident". This finding is supported by the evidence. In 2 A. L. I. Restatement of the Law of Torts, section 346, it is stated: "A possessor of land is subject to liability to others who are privileged to enter it for a public or private purpose, irrespective of his consent, for bodily harm there caused to them by his failure, after he knows or from facts within his knowledge should know of their presence on the land, to conduct his activities thereon with reasonable care for their safety". This statement was referred to with approval in *Hamakawa* v. *Crescent Wharf etc. Co.*, 4 Cal. (2d) 499, where at page 503 [50 Pac. (2d) 803], this observation is made: "In the final analysis, as recognized by those same authorities, the test is whether the defendant engaged in the commission of the negligent act knew of or had reason to expect the presence of the person injured within the range of his negligent activities". In *Lucas* v. *Walker*, 22 Cal. App. 296, 300 [134 Pac. 374, 376], cited in the Hamakawa case, the court said: "But if it be conceded that plaintiff was a mere licensee of defendant when he was hurt it is still true that he was upon the premises and doing the work in question with the knowledge and consent of defendant. This is admitted by the pleadings. A licensee under such circumstances is entitled to recover for any injury to himself, in the absence of contributory negligence upon his part, resulting from the active negligence of the licensor, and such licensor is responsible in damages for any overt act of negligence though the same be neither willful nor wanton." The trial court made no specific finding as to whether decedent was a licensee at the time of the accident, but it matters not whether he be called a licensee, invitee, or one exercising the right of his employer in accordance with the terms of the employer's lease. Defendant Lye had reason to expect that employees of the cement company would be using the pathway at the time he was operating the lumber carrier and he was charged with the duty of refraining from negligently injuring them. (*Pomponio* v. *New York, N. H. & H. R. Co.*, 66 Conn. 528 [34 Atl. 491, 494, 50 Am. St. Rep. 124, 32 L. R. A. 530].)

There is no merit in the contention of defendants that decedent was guilty of contributory negligence as a matter

of law. In this connection it should be noted, in addition to the facts above set forth, that a great noise called by defendant Lye a "roar" and a "rumble" was coming from the cement plant as decedent was slowly moving his wheelbarrow in front of the oncoming lumber carrier. Moreover, plaintiffs were entitled to the benefit of the presumption that decedent took ordinary care for his own safety. We are not unmindful of the rule that this presumption is dispelled when a fact wholly irreconcilable with it is proved by the uncontradicted testimony of the party relying on it or of such party's own witnesses, when such testimony was not the product of mistake or inadvertence. (*Engstrom* v. *Auburn Automobile Sales Corp.*, 11 Cal. (2d) 64 [77 Pac. (2d) 1059]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].) It cannot be successfully contended that evidence was presented either by plaintiffs or defendants which is irreconcilable with the contention that decedent exercised due care.

The judgment is affirmed.

McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 5, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 9, 1939.