[Civ. No. 3719.   Fourth Dist.   May 3, 1948.]

S. M. WILSON, Appellant, v. JOHN E. LOUSTALOT, as Sheriff, etc., et al., Respondents.

William C. Ring and Wiley C. Dorris for Appellant.

Dorsey, Campbell & Bultman for Respondents.

GRIFFIN, J.—Plaintiff appeals from a judgment, order denying a new trial and an order denying application of plaintiff to disqualify Honorable Warren Stockton, as judge of the Superior Court of Kern County.

Plaintiff now concedes that the latter two orders are not appealable and that the attempted appeal therefrom should be dismissed. (Code. Civ. Proc., §§ 936, 963.)

Count 1 of the complaint alleges that defendant John E. Loustalot, as Sheriff of Kern County, deputized Harvey Jordan, who, with defendant Thomas Shatwell, did, on May 12, 1945, at 10 p. m., without a warrant, forceably break into plaintiff's house and falsely arrested and imprisoned him to his general and special damage. Exemplary damages were asked.

Count 2 impleads defendant, United States Fidelity & Guaranty Company, the surety upon the sheriff's official bond.

Defendants admitted that the deputy acted officially and traversed the false arrest, imprisonment and damage, but in a separate defense alleged that plaintiff illegally entered Shatwell's residence and that he arrested and imprisoned him because plaintiff assaulted him with a deadly weapon. The jury returned a verdict for defendants.

Plaintiff's motion for new trial, in addition to the claim of insufficiency of the evidence and errors of law, assigned misconduct of the defendants, the jury and the trial judge, whose qualification to hear the same was challenged in a statement heard and denied by another judge.

Plaintiff, aged 68 years, owned 38 acres of land near Bakersfield. A duplex constructed of two parallel boxcars, interspaced by two middle rooms, was covered by a gabled roof. Plaintiff used the rear center room for storage and occupied the southerly three-room apartment. The Shatwells occupied the north three-room apartment and the front center room. A door on each side of the front center room opened into the respective apartments. In 1942, plaintiff, by written lease, leased to one Olveira for a cash rental, the farm and house, and expressly reserved a small part of the land and the "five south rooms," which includes the two middle rooms above mentioned. Upon the execution of the first lease defendant Shatwell, an employee of the tenant, moved into the north apartment and continued to occupy those premises with his wife and six small children. At the same time or a short time later the Shatwells moved into the front middle room, in which room some of the children kept their clothes and also slept, under some claimed agreement with plaintiff. In 1944, before the expiration of the above lease, Olveira executed a new written lease of the same acreage, for the lessee's "sole and proper use and benefit," on a crop percentage basis. No mention is made in this new lease of any reservation to the plaintiff of the duplex or any portion thereof. Late in 1944, plaintiff orally crop-leased the premises for the year 1945 to one Neves, who testified that he was to get the north one-half of the house; that it was his understanding that he was to have the same house and the same deal Olveira had before he rented the property from plaintiff and that plaintiff was to have one-fifth of the rental from that portion of the premises. He testified that he charged Shatwell $20 per month for rental of the premises and took it out of his wages; that about one week before May 12th, 1945, plaintiff talked to him about wanting Shatwell "moved out of there"; that he told plaintiff he had the right to the north one-half of the house and plaintiff said he didn't care whether he did or not, he still wanted them out of there and "off the place"; that he told plaintiff he would not move them and plaintiff said he "would take the matter up himself."

Plaintiff denied the tenancy relationship of the middle room and claimed that he permitted Shatwell to put a roof over that room and fix it up for his children to sleep in with the proviso that he could use it until such time as he would want to use it himself and that "any time, day or night, that

I wanted that room, that I would expect him to vacate." He claimed that about one week before May 12th he found some of his shrubbery destroyed and asked Shatwell to surrender the middle room and that he refused; that on May 12th, about 8:30 p. m. he climbed through the window into that middle room while the Shatwell family were dining in their apartment, nailed one board across the top and one across the bottom of the door leading to that apartment and then he retired to his apartment. Shatwell called the sheriff. Deputies Jordan and Kayes responded. He told them of plaintiff's action in nailing the door. The deputies went around to plaintiff's apartment and attempted to raise plaintiff by conversation and by pounding, but he failed to answer. They "hollered—told Wilson they were from the sheriff's office, they wanted to talk with him." They were dressed in uniform with deputy sheriff's shields on their caps and a star on each of their coats. Observing no activity and recognizing no response to their calls, the officers went into Shatwell's apartment. Shatwell furnished them with a small pinch bar which Jordan used in prying open the door into the middle room. When the door was finally opened plaintiff was standing on the opposite side of it clad in his B.V.D.'s with a .45 Colt's revolver trained on the door and pointed directly at Jordan. Plaintiff said to Jordan: "I will kill you," and Jordan told him two or three times to drop the gun. One witness testified that he did not hear Jordan tell him before the door was pried open that he was a deputy sheriff, but Jordan was "talking loud enough so he knew he was from the sheriff's office." Plaintiff admitted holding the gun with both hands and pointed at Jordan because "it has got quite a kick when it fires"; that he said nothing to Jordan because "the loaded gun spoke louder than words." Deputy Sheriff Jordan placed plaintiff under arrest, and took him to jail "as is."

Later, the officers returned to his apartment, at plaintiff's request, and obtained his clothes for him and other personal effects. Plaintiff was incarcerated until the following day, Sunday, when he made bail. May 14th, Jordan swore to a criminal complaint charging plaintiff with assault with a deadly weapon. A preliminary examination resulted in holding the plaintiff to answer on that charge.

It is plaintiff's argument that there is no evidence to support the implied finding of the jury that plaintiff's arrest and imprisonment without a warrant was justified by any conduct of plaintiff; that the evidence indubitably shows that, as to

the middle room, no other relationship than that of licensor and licensee existed between plaintiff and defendant Shatwell; that said license was revocable at plaintiff's pleasure, and when the latter notified the former and his employer of its termination, plaintiff was entitled to repossess the room without legal process; that it was clear that he did not breach the peace; that in admittedly breaking into plaintiff's home without a warrant or other lawful authority, defendants were at least guilty of a misdemeanor; that any necessary force may be used to protect from wrongful injury the person or property of one's self, citing Civil Code, section 50; Penal Code, sections 146 and 236; and such cases as *People* v. *Ross,* 19 Cal. App. 469, 474 [126 P. 375]; *Meyer* v. *State of Nebraska,* 262 U.S. 390 [43 S.Ct. 625, 67 L.Ed. 1042]; *Bridges* v. *State of California,* 314 U.S. 252, 263 [62 S.Ct. 190, 86 L.Ed. 192]; and Cooley's Constitutional Limitations, 8th edition 73, quoting (610-611): "Awe surrounded and majesty clothed the king, but the humblest subject might shut the door of his cottage against him, and defend from intrusion that privacy which was as sacred as the kingly prerogatives."

Section 836 of the Penal Code sets forth the circumstances under which a peace officer may arrest another without a warrant, and they are: (1) For a public offense committed or attempted in his presence; (2) When a person arrested has committed a felony, although not in his presence; (3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; (4) On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested; and (5) At night, when there is reasonable cause to believe that he has committed a felony.

█ Although the original written lease would exclude the tenant from a right to occupy the center room, the employee of the tenant did move into that room, under a claimed agreement, which agreement would not necessarily constitute such an employee a mere licensee. The second lease provided that the entire property, including all of the house located thereon, was leased to the tenant "for his sole and proper use and benefit." Although the evidence is in conflict, the jury had the right to believe that the tenant was withholding the wages of Shatwell in payment of rent for the premises actually occupied by him and that plaintiff did or was to receive a one-fifth interest in that rent so retained. Under

these circumstances and without proper legal notice to vacate said premises, plaintiff had no authority to reenter the premises and dispossess the Shatwells in the manner attempted. (*Blum* v. *Robertson,* 24 Cal. 127, 144; Civ. Code, § 789; 15 Cal.Jur. §§ 48, 49, p. 640.)

His entry, in the nighttime, through the window and into their home, would constitute an illegal entry, unauthorized by the law, and the Shatwells had the right to those premises until they were lawfully dispossessed of them and the right to protect them against any such trespasser. (*People* v. *Wheeler,* 73 Cal. 252 [14 P. 796].) Mr. Shatwell furnished the means and asked the assistance of the officers in opening the door and this was done in maintaining his rights. Under these circumstances, plaintiff could not maintain that he was lawfully defending his home and property by the use of the loaded revolver.

The evidence would justify the conclusion that the officers endeavored to and did apprise plaintiff of the fact that they were officers and were there intending to peaceably prevent trouble between plaintiff and the Shatwells and to prevent a possible homicide. Even if plaintiff did not know they were officers until the door was opened, the evidence shows that plaintiff continued to assault Jordan with the gun after threatening his life and after Jordan had told him, two or three times, to drop the gun and desist further assault. (See Pen. Code, § 245; *People* v. *Montgomery,* 15 Cal.App. 315 [114 P. 792]; *People* v. *Simpson,* 134 Cal.App. 646 [25 P.2d 1008]; *People* v. *McCoy,* 25 Cal.2d 177 [153 P.2d 315].)

We believe the evidence justified the implied finding of the jury that there was, as a matter of fact, and a reasonable belief of such fact on the part of Jordan, that an assault with a deadly weapon (a felony) was then being committed by plaintiff and that an arrest of plaintiff for such an offense, without a warrant, was authorized under section 836 of the Penal Code. (*People* v. *Nihell,* 144 Cal. 200 [77 P. 916]; *Dowdell* v. *Owl Drug Co.,* 121 Cal.App. 316 [8 P.2d 890]; *In re Ajuria,* 57 Cal.App. 667 [207 P. 515]; *People* v. *Young,* 136 Cal.App. 699 [29 P.2d 440]; *Bruce* v. *Sibeck,* 25 Cal.App. 2d 691 [78 P.2d 741].)

█ The next point involves several refused instructions of plaintiff pertaining to a claimed presumption running in favor of plaintiff that upon a showing or an allegation in the complaint that plaintiff was imprisoned without process, the law presumes such arrest unlawful and the burden is then

cast upon the accused to justify it by proving that it was lawful, citing *People* v. *McGrew,* 77 Cal. 570 [20 P. 92]; *Monk* v. *Ehret,* 192 Cal. 186 [219 P. 452]; and *Peters* v. *Bigelow,* 137 Cal.App. 135 [30 P.2d 450].

In *People* v. *Agnew,* 16 Cal.2d 655 [107 P.2d 601], these rules were discussed and although held substantially correct, it was specifically stated that they should not be given in criminal cases without proper qualifications. (See, also, *Peters* v. *Bigelow, supra,* and cases cited.) While the presumption of the unlawfulness of the arrest and the shifting of the burden of proof may have been available in testing the validity of a complaint on demurrer and directed verdict, or on a motion for nonsuit, as in *Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 P. 529], under the authorities cited it does not affirmatively appear that the failure to give such an instruction in the instant case constituted prejudicial error where all of the surrounding facts pertaining to the arrest were presented by plaintiff to prove his case, and those facts show that plaintiff did in fact assault the deputy sheriff with a deadly weapon and that such deputy was justified in making the arrest.

In *Friddle* v. *Southern Pacific Co.,* 126 Cal.App. 388 [14 P.2d 568], it was held that plaintiffs could not rely upon the presumption of due care where the evidence *produced by plaintiffs* was inconsistent with such presumption. See, also, *Fortier* v. *Hogan,* 115 Cal.App. 50 [1 P.2d 23]; *Tyson* v. *Burton,* 110 Cal.App. 428 [294 P. 750]; *Duehren* v. *Stewart,* 39 Cal.App.2d 201, 210 [102 P.2d 784]; *Smellie* v. *Southern Pacific Co., supra,* p. 553.

In *State Compensation Insurance Fund* v. *Lamb,* 96 Cal. App. 236 [273 P. 1080], where the trial court refused defendant's offered instruction on the presumption of due care, it was aptly held, quoting from the syllabus: ". . . conceding that the trial court erred either in refusing defendants' requested instruction or in giving the other, the ruling could not have been prejudicial to defendants, where each of the witnesses testified fully as to what he did or did not do and the jury could not have been helped by an instruction on the presumption of care." See, also, *Clary* v. *Lindley,* 30 Cal.App.2d 571 [86 P.2d 920], in which it was said: " 'A disputable presumption is a substitute for proof of facts . . .' It may be controverted by evidence . . . It is dispelled when evidence is produced by the party or his witnesses covering the subject of the presump-

tion . . . When there is a conflict in the evidence introduced by opposing parties, there is no room for the presumption," citing cases. (See, also, *Gay* v. *Cadwallader-Gibson Co., Inc.,* 34 Cal.App.2d 566 [93 P.2d 1051] ; *Noble* v. *Key System, Ltd.,* 10 Cal.App.2d 132 [51 P.2d 887] ; Art. VI, § 4½ of the Const.) This same conclusion must be reached in reference to other presumptions claimed. The jury were in possession of all of the facts and were entitled to find that the defendants were legally justified in making the arrest as contended in their answer.

In *Allen* v. *McCoy,* 135 Cal.App. 500 [27 P.2d 423], the Court of Appeal reversed a judgment for false arrest against certain officers and held, quoting from the syllabus: "An officer is not liable for false imprisonment for the arrest without a warrant of a person who he has reasonable grounds to believe is guilty of a crime," and determined that the facts there related showed "probable cause" for plaintiff's arrest, as a matter of law. (See, also, *Vandiveer* v. *Charters,* 110 Cal.App. 347, 357 [294 P. 440] ; *Bettolo* v. *Safeway Stores, Inc.,* 11 Cal. App.2d 430 [54 P.2d 24] ; *Mackie* v. *Ambassador Hotel & Investment Corp.,* 123 Cal.App. 215 [11 P.2d 3].)

Many of the other instructions refused, either assumed, as a fact, that plaintiff was entitled to possession of the front center room as a part of his home or that Jordan, as a matter of fact, was a trespasser and that plaintiff was entitled to use all reasonable force to expel him from the premises.

We have examined these instructions and found that they were either legally improper or were adequately covered by other instructions or the failure to give them was not prejudicially erroneous.

The next argument is that the court misdirected the jury on the question of self-defense, and in giving an instruction on "reasonable" or "probable cause" for the arrest of plaintiff, and defined this cause as "a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true."

While the instruction pertaining to self-defense, as here given, may not have been a model, the trial court did give, at plaintiff's request, an instruction on the amount of necessary force that a person might use to protect him from wrongful injury to his person or property and concluded with the clause indicating when a homicide may be justified in the defense of one's habitation. It does not appear that the plaintiff has been

prejudiced or that a miscarriage of justice has resulted by the giving of these instructions.

■ The next complaint is directed toward the admission in evidence, over objection, of the justice's docket. The record shows that plaintiff offered such docket only *as to the time when* Jordan's criminal complaint *was filed* against him and as to *the time* when he was *arraigned*. Defendants then offered into evidence, over objection, the balance of the docket showing that the magistrate found "sufficient cause" to believe plaintiff guilty of an assault with a deadly weapon upon Jordan, and ordered him held to answer to the superior court. The court refused to strike this latter portion of the record. Plaintiff then undertook but was precluded from showing that the district attorney failed to file the information within the time required by law and that the case was subsequently dismissed.

It is argued that the evidence of plaintiff's commitment for trial was inadmissible under the holding in *Collins* v. *Owens*, 77 Cal.App.2d 713 [176 P.2d 372], and that the court erred in not permitting plaintiff to show that the information was subsequently dismissed. It appears from the cases that an action for false imprisonment is based upon an illegal arrest and the manner of the prisoner's release need not be shown and the reason of the court for his release in most cases would be immaterial. (*Neves* v. *Costa*, 5 Cal.App. 111 [89 P. 860].) However, plaintiff cannot claim prejudicial error because he offered and the court gave an instruction to the effect that "Neither the filing of a complaint, nor the arrest of S. M. Wilson for alleged crime, nor his commitment for trial, after a preliminary examination by Justice of the Peace McGee, is to be regarded by you as any evidence of his guilt of any offense for which he was allegedly arrested and imprisoned, nor is the same any evidence that defendants were justified in arresting or imprisoning him. You are bound to determine whether or not plaintiff was falsely arrested and imprisoned, by the circumstances that existed when the arrest and imprisonment occurred, and no subsequent matter can legalize the same, if illegal when done."

■ The execution of the surety bond by defendant United States Fidelity & Guaranty Company was admitted in the pleadings and plaintiff introduced the official bond into evidence. The court erroneously permitted the defendant sheriff to testify that he would have to personally satisfy judgment for the plaintiff in case the judgment went against

said surety company. It was the province of the court and not the defendant sheriff to interpret the legal effect of the provisions of the bond to the jury. (Code Civ. Proc., § 2102.)

Section 2847 of the Civil Code provides that "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed. . . ."

Plaintiff offered an instruction asking the court to disregard the testimony of the witness. The court refused this instruction which was error. However, since the defendant surety company was made a party defendant and the terms of the surety bond were before the jury, and since the law specifically makes such principal bound to reimburse the surety under the circumstances related, we see no prejudicial error resulting from the failure of the court to so instruct the jury.

█ It is next argued that the court prejudicially erred in placing the jury in charge of the deputies of defendant sheriff. No objection was made to this procedure by counsel for the plaintiff nor did counsel call the court's attention to that fact when the deputy sheriff was sworn to take charge of the jury. We are not convinced that plaintiff suffered any prejudice by reason of this procedure, particularly where no complaint was made at the proper time to make such a complaint.

█ The remaining claim of reversal, calling for a review, involves the question raised on a motion for new trial pertaining to the alleged misconduct by the trial judge and the jury and the claimed prejudice of the trial judge resulting in an order by Honorable Clark Clement determining that said trial judge was not disqualified to hear the motion for new trial. The same evidence was introduced in both matters. Affidavits were presented challenging the trial court's qualifications to hear and determine the motion for new trial in which it is alleged generally that the trial judge, during the trial, conversed with, shook hands and fraternized with members of the jury, and likewise with defendant sheriff in the presence of said jury; that the trial judge manifested hostility towards plaintiff's counsel during the trial; and alleged that the sheriff and said judge and their families have been intimate friends in that county for over 20 years and that in view of the apparent errors in the instructions given and in erroneously admitting testimony at the trial the prejudice of the trial judge in favor of the defendant sheriff was apparent. The trial judge denied these charges generally. The judge assigned to hear and determine the issue of the trial judge's disqualification

determined that such trial judge was not disqualified to hear the motion for new trial. It cannot be held that such determination was erroneous. There was sufficient evidence to support the verdict. No prejudicial error appears in the rulings of the court or in the instructions given or refused.

Nothing in connection with the nonappealable orders requires a reversal of the judgment.

Attempted appeals from orders dismissed. Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.