Filed 7/15/21  P. v. Debase CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074501 |
| v. | (Super.Ct.No. FWV19002994) |
| DERRICK RON DEBASE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed in part; reversed in part.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorney Generals, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Collette C. Cavalier and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Derrick Ron Debase guilty of being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1))[1] and two counts of assault with a firearm (§ 245, subd. (a)(2)). The jury found true the allegations that defendant personally used a firearm, in particular a revolver, during the two assaults. (§ 12022.5, subd. (a).) The trial court sentenced defendant to prison for a term of 16 years four months.

Defendant raises four issues on appeal. First, defendant contends substantial evidence does not support the "present ability" element of his assault convictions. Second, defendant asserts the trial court erred by imposing the upper term for the firearm enhancement in Count 2. Third, defendant contends the trial court erred by imposing fines without evidence of defendant's ability to pay. Fourth, defendant asserts the abstract of judgment contains errors. We reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL HISTORY

### A.    PROSECUTION'S CASE

Shaqwenya Davis and Eric Labella lived together in Labella's car. Davis and Labella often spent time in Cabrillo Park in Upland (the park). Defendant also spent time in the park. Defendant drove a red Lexus. Labella first met defendant in October 2018; Labella saw defendant in the park smoking a cigarette and asked him for one. After that, Labella and defendant spoke to one another approximately 15 times, having 20- to 30-minute conversations.

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

2

On September 10, 2019, at approximately 3:30 p.m., Davis, Labella, and two or three of their friends (collectively, the group) were sitting on a bench in the park. Defendant rode past the group on a bicycle. Labella recognized the bicycle as belonging to another person, Dennis. One of the friends, Paul, asked defendant, " 'Hey, did you steal that bike or did [Dennis] let you use it?' " Defendant ignored the question. Paul repeated the question in a louder voice. Defendant "jumped off the bike and started cussing him out." Defendant and Paul argued. Defendant was angry and told Paul he would "blow a hole in his head."

Dennis arrived, retrieved his bicycle, and said he lent the bicycle to defendant. Defendant told the group "to get out of his park." The group told defendant to leave. Defendant walked away. The group left for their respective homes.

Approximately one hour later, Labella sat in the driver's seat of his car playing a game on his phone, while Davis sat in the front passenger seat of the car reading a book on her phone. The front passenger window of the car was down. Defendant walked to within four feet of the front passenger door. Defendant pointed a gun at Davis and said, " 'If I ever catch you in my park again, I'll bust a cap in your ass.' " Davis described the gun as a silver revolver.

Defendant walked toward the back of the car. Davis called the police. Labella exited the car. Defendant placed the gun in his pocket. Defendant and Labella argued in the middle of the street. Defendant walked to a sidewalk and pulled the gun out of his pocket.

Defendant moved back and forth and carelessly swung the gun in a waving motion from right to left. Defendant pointed the gun at Labella and said " 'You're going to be the first one I kill with this gun.' " Defendant and Labella were standing approximately 50 feet apart when defendant made that statement. Defendant then wrapped the gun in a green "rag," placed it in his pocket, and ran away. Labella described the gun as a silver revolver. A bystander who witnessed the incident also described the gun as a silver revolver.

City of Upland Police Officer Robert Castaneda found a home address for defendant approximately one and one-half miles from the park. Castaneda drove past the home and saw a red Lexus parked in the carport. Later, during the night of September 10, Castaneda heard a dispatch announcement concerning a disturbance at defendant's home. Castaneda contacted Officer Quinn Hanley, who was responding to the disturbance, to inform him of the firearm incident in the park. Due to the firearm involved in the park incident, Hanley waited near defendant's home for other officers to arrive. As Hanley waited, defendant, in the red Lexus, drove past. Hanley followed defendant and made a traffic stop. Hanley searched the Lexus and found a silver revolver wrapped in a green towel on the floorboard behind the passenger seat. The gun was loaded with "five 9-millimeter bullets inside the cylinder."

A photograph was admitted at trial that showed the revolver with loose cartridges underneath it, resting on a green towel. Three cartridges are partially visible sticking out from underneath the gun's frame, barrel, and trigger guard. It appears two more cartridges may be resting underneath the gun's barrel, but it is difficult to discern due to

4

them being almost entirely obscured by the barrel.  The barrel of the revolver is engraved with the words "UNDERCOVER .38 SPL."

B.      DEFENDANT'S CASE

Defendant testified at trial.  Defendant met Davis and Labella in August 2017.  At that time, defendant was going through a divorce and was living in his vehicle.  The friendly relationship between the three ended when Labella became jealous of the time that Davis and defendant spent together while Labella was at work.  Labella would chase defendant out of the park by using profanities toward defendant.

On September 10, 2019, defendant went to the park to exercise.  Defendant borrowed Dennis's bicycle and rode past the group on the bench.  Paul asked whether defendant stole the bicycle.  Defendant was 60 years old and alone; he would not have confronted the group by himself.  Defendant did not threaten to shoot Paul.  Defendant stayed in the park and sat on a bench to "kind of gather [him]self" due to the group's argumentative and threatening statements.

Defendant decided to go home.  Twenty to 30 minutes after the initial confrontation with the group, defendant was walking in the middle of the street on his way home, trying to avoid the group, when he saw Davis and Labella outside of their car.  Defendant heard Davis on the phone claiming that defendant had attacked her and Labella.  Defendant did not approach their car.  Defendant did not handle a gun on September 10 and did not point a gun at Davis or Labella.  Defendant went home.

Defendant's wife owned the red Lexus.  The firearm in the red Lexus was defendant's wife's undercover .38 special.  Defendant's wife was "an avid target

5

shooter." Defendant had a light green and white bandana with him in the park when he was exercising. Defendant did not recognize the green towel covering the gun in the car. In August 2019, the police were investigating defendant for stealing the revolver from his wife, but defendant did not steal the gun.

## DISCUSSION

### A.    SUBSTANTIAL EVIDENCE

Defendant contends there is not substantial evidence to support the present ability element for the assault convictions because the .38-caliber gun was loaded with nine-millimeter ammunition and there was no evidence indicating the gun would fire with that ammunition.

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "A long line of California decisions holds that an assault is not committed by a person's merely pointing an (unloaded) gun in a threatening manner at another person." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, fn. 3 (*Rodriguez*).) When a gun is unloaded "the defendant lacks the present ability to commit [a] violent injury." (*People v. Fain* (1983) 34 Cal.3d 350, 357, fn. 6.) The same is true if the firearm is inoperable. (*People v. Sheldon* (1989) 48 Cal.3d 935, 962.)

The evidence concerning the caliber of the ammunition was uncontradicted. During the prosecutor's direct examination of Officer Hanley, the following exchange occurred:

"[Prosecutor:]  And the gun, was the revolver loaded?

"[Hanley:]  It was.

6

"[Prosecutor:] With what?

"[Hanley:] It had five 9-millimeter bullets inside the cylinder."

It is the jury's role to decide what evidence is true and which evidence is false. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) A trier of fact does not have to accept uncontradicted testimony as true. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1231-1232; *People v. Woods* (1946) 75 Cal.App.2d 246, 248.) Uncontradicted testimony rejected by the trier of fact can be credited on appeal if, " ' "in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved." ' " (*In re Caden C.* (2021) 11 Cal.5th 614, 1112-1113.)

It appears, from the jury's guilty verdicts, that the jury discredited Hanley's testimony that the gun was loaded with nine-millimeter ammunition, and instead found that the gun was loaded with .38-caliber ammunition. Although a photograph of the gun and cartridges was admitted, the cartridges are only partially visible because they are underneath the firearm. Additionally, the cartridges are angled so that one cannot see the base of the cartridges, which means one cannot read the imprint of the cartridges' size.

From the photograph, it would be difficult for a layperson to discern whether the cartridges were .38-caliber or nine-millimeter. Officer Hanley's testimony about the caliber of the ammunition was the only direct evidence offered regarding the ammunition's caliber. Officer Hanley found the loaded gun in the car, and his testimony on the subject was clear and positive. As a result, there was no rational basis for the jury to discredit Hanley's testimony regarding the caliber of the ammunition.

7

Accordingly, we will credit Hanley's testimony that the gun was loaded with nine-millimeter ammunition.

We now turn to the sufficiency of the evidence. "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Rodriguez*, *supra*, 20 Cal.4th at p. 11.)

Hanley found a silver revolver, wrapped in a green towel, inside the car defendant was driving. In the photograph of the firearm and cartridges, one can see engraved on the barrel of the gun the words "UNDERCOVER .38 SPL." That evidence, coupled with his description of the caliber of the ammunition, reflects the .38-caliber revolver was loaded with nine-millimeter ammunition.

A layperson can be expected to know that a firearm is typically operable when loaded with the correct size of ammunition. However, a layperson cannot be expected to know whether a .38-caliber gun loaded with nine-millimeter ammunition would successfully fire. (See generally *People v. Kainzrants* (1996) 45 Cal.App.4th 1068, 1079 [gun loaded with wrong ammunition jammed]; see also *People v. Jasmin* (2008) 167 Cal.App.4th 98, 104-105 [gun loaded with wrong ammunition would fire one shot, then jam].)

Because the .38-caliber firearm was loaded with nine-millimeter ammunition, the prosecutor needed to provide more evidence in order to establish that the gun was

8

operable. As examples, the prosecutor could have had an expert testify that a .38-caliber gun will fire with nine-millimeter ammunition; or the prosecutor could have had a person test fire defendant's gun with the 9-millimeter ammunition and testify about that successful test fire. (See *People v. Cole* (1956) 47 Cal.2d 99, 103 [expert may testify when "the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact"]; see also e.g., *People v. Jasmin*, *supra*, 167 Cal.App.4th at pp. 104-105 [firearm evidence].) Without some evidence of whether a .38-caliber gun operates with nine-millimeter ammunition, there is a gap in the evidence regarding the "present ability" element, which means substantial evidence does not support defendant's two assault convictions.

The People contend one can reasonably infer from defendant's words and conduct that the gun was operable. A jury may rely upon circumstantial evidence, such as the defendant's statements and behavior, to find that a gun is loaded and operable at the time of an alleged assault. (*Rodriguez*, *supra*, 20 Cal.4th at p. 12.) "For example, in *People v. Montgomery* (1911) 15 Cal.App. 315, . . . the Court of Appeal, in the absence of direct evidence the gun used in the offense was loaded, and despite the defendant's own testimony it was not, held the jury was entitled, under the circumstances of the case, to reject contrary testimony and find the gun was loaded. [Citation.] The court noted the defendant was enraged when he left a fight and that he returned with a gun he leveled at the victim, declaring, ' "I have got you now." ' [Citation.] These words, the court reasoned, would be meaningless unless the weapon were loaded." (*Rodriguez*, at pp. 12-13.)

9

When arguing about the bicycle, defendant told Paul that defendant would "blow a hole in [Paul's] head." When confronting Davis, defendant pointed the gun at her and said, " 'If I ever catch you in my park again, I'll bust a cap in your ass.' " When confronting Labella, defendant pointed the gun at him and said, " 'You're going to be the first one I kill with this gun.' "

Defendant's words and actions support the finding that the gun was loaded, in that one can reasonably infer defendant would not have made such threatening statements with an unloaded firearm. However, the jury cannot determine the caliber of the ammunition from defendant's words and actions. Because there was no rational basis for the jury to reject Hanley's testimony that the gun was loaded with nine-millimeter ammunition, one cannot, without further evidence, conclude that the .38-caliber gun would fire.

In sum, defendant's two convictions for assault with a firearm (§ 245, subd. (a)(2)) (Counts 2 & 3) are not supported by substantial evidence. We will reverse the two convictions and the associated firearm enhancements (§ 12022.5, subd. (a)). (See *People v. Tua* (2018) 18 Cal.App.5th 1136, 1142 [enhancements attach to substantive offenses].)

B.    UPPER TERM

Defendant contends the trial court abused its discretion by imposing the upper term for the gun enhancement (§ 12022.5, subd. (a)) in Count 2. We have concluded that defendant's assault conviction in Count 2 must be reversed, which will include reversal of the firearm enhancement. Accordingly, this issue is moot because we can

10

provide defendant no further relief on this issue.  (*People v. Rish* (2008) 163

Cal.App.4th 1370, 1380 (*Rish*).)

       C.     FINES AND FEES

Defendant contends the trial court erred by (1) imposing and not staying a $5,000

restitution fine (§ 1202.4), and (2) imposing a $5,000 a parole revocation fine

(§ 1202.45) without first determining defendant's ability to pay.  When sentencing

defendant, the trial court deemed the Count 2 assault conviction to be the principal

count.  The trial court ordered that the sentence for Count 1 (felon in possession of a

firearm) be served concurrently with the Count 3 assault sentence.  Given that Counts 2

and 3 will be reversed due to a lack of substantial evidence, we will direct the trial court

to resentence defendant.  As a result, the issue of fines and fees is moot because we can

provide defendant with no further relief on the issue.  (*Rish*, *supra*, 163 Cal.App.4th at

p. 1380.)

       D.     ABSTRACT OF JUDGMENT

Defendant contends the abstract of judgment needs to be corrected.  The People

agree.  Due to the reversal of Counts 2 and 3, the trial court will need to resentence

defendant.  Therefore, the abstract of judgment will be changed thus rendering this issue

moot.  (*Rish*, *supra*, 163 Cal.App.4th at p. 1380.)

## DISPOSITION

The two convictions for assault with a firearm (§ 245, subd. (a)(2))

(Counts 2 & 3) and the associated firearm enhancements (§ 12022.5, subd. (a)) are

reversed.  The entire sentence is reversed.  The trial court is directed to resentence

11

defendant on the remaining conviction of being a felon in possession of a firearm (§ 29800, subd. (a)(1)) (Count 1).  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER

J.


We concur:


McKINSTER

Acting P. J.


MENETREZ

J.